April HICKS, Appellant

v.

Jerri HALSEY (Now Mitchell), Appellee.

No. 2012–CA–001154–ME.

Court of Appeals of Kentucky.

June 14, 2013.

J. Adam Newton, Ashland, KY, for Appellant.

Jennifer Burke Elliott, Prestonsburg, KY, for Appellee.

Before COMBS, MOORE, and TAYLOR, JUDGES.

*OPINION*

COMBS, Judge:

April Hicks appeals from the order of the Floyd Family Court that designated Jerri Halsey as the *de facto* custodian of Hicks's child and awarded Halsey sole cus-

tody. After our review, we affirm in part, vacate in part, and remand.

█ Hicks's child (Child) was born on September 25, 2008. In December 2009, Hicks and Child moved in with Halsey, who is Hicks's sister. On February 13, 2010, Hicks went to Tennessee to meet a man with whom she had become acquainted on the internet. Before leaving, she signed a notarized document which authorized Halsey and Halsey's ex-husband to seek medical treatment for Child if needed. Both Hicks and Halsey testified that Hicks planned to retrieve Child at some undetermined point in the future. However, Halsey testified that in the meantime, she needed to place Child in daycare and that she was unable to do so without official guardianship of Child. Halsey also recognized that Child exhibited developmental delays and needed help. Child was eligible to be enrolled in the First Steps program, but again, the involvement of an official guardian was required.

Therefore, Halsey filed a petition for guardianship of Child in Floyd District Court on February 19, 2010. On the same day, upon advice of the county attorney, Halsey also filed criminal charges against Hicks for child abandonment. Meanwhile, after a brief stay in Tennessee, Hicks apparently moved to Alabama without explanation for a period of time. Halsey did not have any means of contacting her. Hicks did not send money to Halsey for Child's expenses; it is disputed as to whether Hicks tried to contact Halsey by telephone.

However, it is undisputed that Hicks has not seen—nor attempted to see—Child since February 13, 2010. Hicks returned to Kentucky—but not to Floyd County. She filed a motion to set aside the guardianship on June 7, 2010. On August 31, 2010, Halsey filed a petition in Floyd Fam-

ily Court seeking *de facto* custodian status and custody of Child.

After being continued a number of times, the case was heard on February 23, 2012. Halsey, her daughter, and her husband each testified that Child was fully integrated into their household. They testified that Halsey cares for Child on a daily basis. Both Halsey and her daughter recounted an episode that occurred three days before Hicks initially left their home. Child was very sick, and although Hicks was in the home, Halsey's daughter tended to Child while Halsey was at work. When Halsey came home from work, she and her daughter took Child to the emergency room. Hicks did not go along.

Medical records showed that Child had presented at the hospital with a fever of one hundred three degrees. Hicks testified that Child had never had a fever when she was in Halsey's home. She also refused to acknowledge that Child had any developmental problems. Hicks testified that she had not attempted to see Child in person in the nearly two years that she had been back in Kentucky. She also acknowledged that she had not sought visitation with Child through the courts. The family court entered its findings and order designating Halsey as *de facto* custodian and granting her custody on May 29, 2012. Hicks filed this appeal.

Hicks argues that the family court erroneously designated Halsey as Child's *de facto* custodian. We disagree. A *de facto* custodian is:

> a person who has been shown by clear and convincing evidence to have been the primary caregiver for, and financial supporter of, a child who has resided with the person for a period of six (6) months or more if the child is under three (3) years of age[.] ... Any period of time after a legal proceeding has been commenced by a parent seeking to regain custody of the child shall not be included in determining whether the child has resided with the person for the required minimum period.

Kentucky Revised Statute[s] (KRS) 403.270(1)(a). The purpose of designation as a *de facto* custodian is to afford a person who has acted as a parent equal status with parents in court. *Allen v. Devine*, 178 S.W.3d 517, 525 (Ky.App.2005); KRS 403.270(1)(b).

■ Clear and convincing evidence is "proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d 114, 117 (Ky.App. 1998) (*quoting Rowland v. Holt*, 253 Ky. 718, 70 S.W.2d 5, 9 (1934)). It has also been described as "the burden of proof to produce evidence more persuasive than a mere preponderance, but proof which need not rise to the level of beyond a reasonable doubt." *Hardin v. Savageau*, 906 S.W.2d 356, 357–58 (Ky.1995). We may not reverse the trial court if its findings are supported by substantial evidence in the record. *M.P.S. v. Cabinet for Human Resources*, 979 S.W.2d at 116.

Hicks makes the preliminary argument that Halsey was precluded from seeking custody and *de facto* custodianship because Halsey had unclean hands. "The unclean hands doctrine is a rule of equity that forecloses relief to a party who has engaged in fraudulent, illegal, or unconscionable conduct but does not operate so as to 'repel all sinners from courts of equity.'" *Suter v. Mazyck*, 226 S.W.3d 837, 843 (Ky. App.2007) (quoting *Dunscombe v. Amfot Oil Co.*, 201 Ky. 290, 256 S.W. 427, 429 (1923)). However, the doctrine is not applicable if the defendant's conduct has been more offensive than that of the plaintiff. *Id.*

Hicks claims that Halsey acted unconscionably when she filed the petition for the guardianship and the criminal abandonment charges in District Court. To support her claim, Hicks points to the fact that Halsey knew that Hicks intended to be away for approximately one week and that the documents were filed after only six days. However, Hicks overlooks the fact that she actually never returned to Halsey's home to reunite with her child. In fact, she waited four months before returning to the state of Kentucky. Furthermore, Halsey was in a position where she felt forced to seek the guardianship; *i.e.*, it was necessary in order to place Child in daycare and to obtain help for Child's developmental delays through the First Steps program. When she consulted with the county attorney about the guardianship, she was advised to file the criminal charges. Hicks does not provide proof of any unconscionable or fraudulent behavior by Halsey. Therefore, we are not persuaded that Halsey is barred by the unclean hands doctrine.

■ Hicks argues that Halsey did not meet the qualifications of *de facto* custodian because she had not been Child's primary caretaker during the requisite six-month period. The basis of this argument is that Halsey's ex-husband, Tony, assisted in the care of Child. Hicks relies on *Consalvi v. Cawood*, 63 S.W.3d 195 (Ky.App. 2001), *overruled on other grounds by Boone v. Ballinger*, 228 S.W.3d 1 (Ky.App. 2007). In that case, the court held that a child's former stepfather was not qualified to be the *de facto* custodian just because he had parented along with the child's mother. Therefore, while he had been *a* primary caretaker, he had not been *the* primary caretaker. Hicks claims the same applies to Halsey: because of Tony's involvement, she was *a* primary caretaker but not *the* primary caretaker.

Such a scenario is not the case here. Halsey was not a stepparent acting in conjunction with a natural parent. She was acting in place of a parent. In this case, the natural parent—Hicks—was neither involved nor even present. Even if we were to apply the concept to Tony, the facts do not support recourse to the precedent of *Consalvi*. Tony testified that when Hicks and Child arrived at Halsey's home, he and Halsey were divorced; they lived in separate residences. Tony was in Halsey's home part of the time and assisted in baby-sitting. He also occasionally purchased diapers or milk. However, the evidence supports the finding of the family court that Halsey was Child's primary caretaker. She provided for him financially, arranged his daycare, got him ready for daycare, and took him to the doctor and emergency room for medical treatment—even when Hicks was still in the home. Hicks emphasizes that the document she prepared which gave Halsey permission to seek medical treatment for Child included authorization for Tony. However, Halsey still had to seek guardianship for Child in order to place him in daycare and receive assistance from First Steps. Tony was not involved in the guardianship. While Tony did assist Halsey, it was more in a capacity as a babysitter. There was sufficient evidence to support the family court's finding that Halsey had been the primary caretaker.

■ Hicks also contends that the motion she filed to have Halsey's guardianship set aside tolled the six-month time period prescribed by KRS 403.270(1)(a). Hicks is correct that the time period is tolled if: 1) a parent commences an action, not merely defends one; and 2) said action is related to regaining custody. *Sherfey v. Sherfey*, 74 S.W.3d 777, 781 (Ky.App.2002), *overruled on other grounds by Benet v. Commonwealth*, 253 S.W.3d 528 (Ky.2008).

We are not persuaded that a motion to set aside guardianship satisfies the test. First of all, the motion to set aside the guardianship was made in district court and did not address custody. Custody determinations are within the jurisdiction of circuit (or family) court. KRS 23A.100. Guardianship comes within the jurisdiction of district court. KRS 387.020 Furthermore, guardianship is not the equivalent of custody. Guardianship gives a person "the powers and responsibilities of a parent regarding the ward's support, care, and education[.]" KRS 387.065(1). Although the guardian "shall take custody of the ward[,]" guardianship is not necessarily the same as legal custody. KRS 387.065(2)(a). The predecessor to our Commonwealth's highest court construed an earlier version of the statute, which included the same phrase, in an attempt to resolve the commingling of the terms:

> the statutory guardian shall have "the custody of his ward." But even so, a court of equity has power to determine the right of actual control and custody of an infant in the legal custody of the guardian. The statute deals solely with the legal custody of the ward for the purpose of providing it with the necessary and proper maintenance and education out of its estate in his hands. It is the intendment of the statute to commit the custody of the ward, personally, to the guardian, if he is a fit person, and it does not appear that the best interest of the ward requires the actual custody be entrusted to another. Equity will place the custody of the infant ward where its future welfare demands. And in determining who shall have the custody of the infant, its welfare is of paramount concern.

*Fletcher v. Lippert's Guardian*, 251 Ky. 469, 65 S.W.2d 450, 451 (1933). (Internal citations omitted).

The Court also has observed that, "the right of the guardian to custody of the ward is not an absolute one, but the matter of custody is subject to control by the court." *Fitzpatrick's Guardian v. Baker*, 227 Ky. 788, 14 S.W.2d 181, 182 (1929). More recently, in an unpublished case, this Court held that a voluntary guardianship agreement between a mother and a nonparental couple did not divest the mother of her superior custody rights. *R.T. v. D.R.*, 2008 WL 4754829 at *4 (Ky.App. Oct. 31, 2008). In fact, we noted that a contrary finding would undermine the public policy of KRS 387.065. *Id.*

Because guardianship is not the same as custody, we cannot agree that Hicks's motion to set aside the guardianship fulfilled the requirement of initiating a legal proceeding for the purpose of regaining custody. Therefore, the statutory period was not tolled.

 Hicks also appears to argue that her answer to the petition for custody tolled the six-month statutory period. The answer requested that custody be restored to her. Her contention fails on its face because she filed her answer on December 21, 2010—more than ten months after she left Child with Halsey. Therefore, this argument is moot.

Accordingly, the family court did not err in its determination that Halsey satisfied the statutory qualifications of *de facto* custodian. It properly afforded Halsey equal standing as a parent in its custody determination.

 Regrettably, however, the family court did not make sufficient findings to support its determination of custody. KRS 403.270(2) instructs the court in mandatory language to:

> determine custody in accordance with the best interests of the child and equal consideration shall be given to each par-

ent and to any de facto custodian. The court shall consider all relevant factors including:

(a) The wishes of the child's parent or parents, and any de facto custodian, as to his custody;

(b) The wishes of the child as to his custodian;

(c) The interaction and interrelationship of the child with his parent or parents, his siblings, and any other person who may significantly affect the child's best interests;

(d) The child's adjustment to his home, school, and community;

(e) The mental and physical health of all individuals involved;

(f) Information, records, and evidence of domestic violence as defined in KRS 403.720;

(g) The extent to which the child has been cared for, nurtured, and supported by any de facto custodian;

(h) The intent of the parent or parents in placing the child with a de facto custodian; and

(i) The circumstances under which the child was placed or allowed to remain in the custody of a de facto custodian, including whether the parent now seeking custody was previously prevented from doing so as a result of domestic violence as defined in KRS 403.720 and whether the child was placed with a de facto custodian to allow the parent now seeking custody to seek employment, work, or attend school.

In this case, the family court made lengthy findings impliedly pertaining to the *de facto* custodian factors—basically, the conduct of the adults in the case. However, in reaching its custody determination, it merely wrote, "Jerri Halsey (now Mitchell), as defacto [sic] custodian shall have custody of [Child], as the Court, taking into consideration all the factors set forth in KRS 403.270, feels same is in the child's best interests."

Kentucky Rule[s] of Civil Procedure (CR) 52.01 requires the family court to make highly specific findings because custody determinations are matters conducted without a jury. The Supreme Court has recently held that in custody matters, the findings *must* be in writing.

CR 52.01 requires that the judge engage in at least a good faith effort at fact-finding and that the found facts be included in a written order. Failure to do so allows an appellate court to remand the case for findings, even where the complaining party failed to bring the lack of specific findings to the trial court's attention.

*Anderson v. Johnson,* 350 S.W.3d 453, 458 (Ky.2011). In a subsequent opinion, Justice Venters elaborated on the Court's reasoning.

We again state with emphasis that compliance with CR 52.01 and the applicable sections of KRS Chapter 403 requires written findings, and admonish trial courts that it is their duty to comply with the directive of this Court to include in all orders affecting child custody the requisite findings of fact and conclusions of law supporting its decisions. Consideration of matters affecting the welfare and future of children are [*sic*] among the most important duties undertaken by the courts of this Commonwealth. In compliance with these duties, it is imperative that the trial courts make the requisite findings of fact and conclusions of law to support their orders.

*Keifer v. Keifer,* 354 S.W.3d 123, 125–26 (Ky.2011). Thus, a rigid standard of reciting statutory standards—coupled with supporting facts—has now become a requirement.

We note that the hearing in the case before us was held only a few months after *Anderson* and *Keifer* were rendered. Additionally, we are persuaded that the family court reached the appropriate outcome. Child has been integrated into the home of his aunt and knows no other home. Hicks testified that Child did not have any high fevers when she and Child were both in Halsey's home; yet, medical records showed that Halsey had taken Child to the emergency room with a high fever three days before Hicks left for Tennessee. Hicks never petitioned the court for visitation or offered financial assistance to Halsey for Child's care. Halsey has stood in the place of Child's parent since Child was a little over one year age, and now he is four and one-half years of age. Nonetheless, we are compelled by recent case law to remand to the family court for specific findings regarding the best interest of Child. *See* Rule[s] of the Supreme Court of Kentucky (SCR) 1.030(8)(a).

In summary, we affirm the family court's substantive finding that Halsey is the *de facto* custodian but must remand for amplified, specific findings in writing as to the best interest of the child for the purposes of the custody determination.

ALL CONCUR.