RENDERED: JUNE 15, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000609-MR

DATE 7/6/17 Kim Redman, DC

SCOT E. GAITHER     APPELLANT

ON APPEAL FROM DAVIESS CIRCUIT COURT
V.     HONORABLE JOSEPH W. CASTLEN, III, JUDGE
NO. 02-CR-00446

COMMONWEALTH OF KENTUCKY     APPELLEE

## OPINION OF THE COURT BY JUSTICE VENTERS

### AFFIRMING

In 2004, Appellant Scot E. Gaither was convicted and sentenced in the Daviess Circuit Court for the 2001 kidnapping of James Parson[1] and for the associated crimes of first degree manslaughter, tampering with physical evidence, and theft by unlawful taking (property less than $300.00). Those convictions were affirmed by this Court in *Gaither v. Commonwealth*, 2004-SC-0474-MR, 2006 WL 436071 (Ky. Feb. 23, 2006).

Later, upon Appellant's motion for post-conviction relief pursuant to RCr 11.42, the trial court set aside Appellant's kidnapping sentence and granted a

---

[1] Parson was not released alive. Kidnapping is a capital offense when the victim is not released alive. KRS 509.040(2).

new penalty-phase trial on that charge.[2] Upon retrial of the kidnapping penalty phase, the trial court imposed the sentence recommended by the jury: imprisonment for life, to be served concurrently with the twenty-year sentence for manslaughter. This appeal followed.

Appellant argues that the retrial of the kidnapping penalty phase was fatally flawed because the trial court 1) allowed the admission of irrelevant, cumulative and unduly prejudicial evidence; 2) permitted the introduction of improper victim impact testimony; 3) improperly limited his admission of mitigation evidence; and 4) permitted the Commonwealth to display evidence from the guilt-phase trial during closing argument without prior notice to Appellant. For the reasons stated below, we affirm the judgment.

## I. GRUESOME DETAILS OF THE CONDITION OF THE VICTIM'S BODY WERE IRRELEVANT AND CUMULATIVE BUT DID NOT SWAY THE JURY'S SENTENCING DECISION.

Pursuant to our statutory scheme for bifurcated criminal trials and jury sentencing, the guilt phase and punishment phase of a trial are ordinarily heard by the same jury. Occasionally that protocol becomes a practical impossibility, when for example, as in cases like this one, flaws in the original trial compel a re-trial only of the penalty phase. In *Boone v. Commonwealth,*

---

[2] The trial court rejected several other claims made by Appellant in his RCr 11.42 motion. The Court of Appeals affirmed the trial court on twenty-two of twenty-five issues; three issues were remanded. *Gaither v. Commonwealth,* 2007-CA-000634, 2008 WL 4822233 (Ky. App. Nov. 7, 2008). After the remand, although Appellant did not appeal the trial court's ruling on his kidnapping sentence, he did appeal other aspects of the trial court's RCr 11.42 ruling. *See* also *Gaither v. Commonwealth,* 2010-CA-002300-MR, 2013 WL 3013579 (Ky. App. June 14, 2013).

821 S.W.2d 813, 814-15 (Ky. 1992), we outlined a practical course for trial courts to follow in such circumstances, including the preparation of a carefully-drafted stipulation of the relevant facts to be read to the jury.[3]

Although the manner of presenting the essential information remains subject to the trial court's discretion, the parties and the trial court in the case now before us followed *Boone's* suggestion to present a stipulated summary of the guilt-phase evidence to the penalty-phase jury. A portion of the stipulated summary pertaining to the issue under review reads as follows:

> The Daviess County Coroner took charge of the body and with police assistance the body was packaged and removed from the bottom of the ditch. The body was transported to the Kentucky Medical Examiner's Office and examined by Dr. Amy Burrows. Dr. Burrows testified that her examination of Mr. Parson's body revealed there were two bullets inside the body but she was unable to identify where the bullets entered the body due to the body being so badly decomposed. She did testify that there were two large defects in the skin from the right side of the chest over to the left side of the chest and in the left side of the lower back, which were most likely the entrance wounds.
>
> Because of the condition of the body, the body and adjacent materials, mud and grass, from around the body were submitted to Dr. Amy Burrows, a medical examiner, along with the body. She testified as a witness for the Commonwealth that her examination did not find any evidence of restraints on the body, such as rope or duct tape. An examination of the materials led to the recovery of a spent 9 mm shell casing.

Over Appellant's objection, the trial court permitted the Commonwealth to go outside the agreed-upon summary and introduce recorded portions of Dr.

---

[3] For other cases providing similar guidance, see *Jacobsen v. Commonwealth,* 376 S.W.3d 600, 612 (Ky. 2012) and *St. Clair v. Commonwealth,* 319 S.W.3d 300, 311-312 (Ky. 2010).

3

Burrows' actual guilt-phase testimony. That testimony included a gruesome macabre description of the decomposition of Parson's body. Specifically, the jury heard that Parson's head had fallen off his torso and was carried to the autopsy lab in a baby-sized body bag; that Parson's left arm had detached from his body; that decomposition rendered his face unrecognizable; that maggots and insects infested the body; and that large portions of the skin were removed by animal and insect activity.

Citing KRE 402[4] and KRE 403,[5] Appellant argues that this additional detail was unnecessarily cumulative, given the summary's reference to Parson's "badly decomposed" body, and irrelevant to a penalty determination for the kidnapping charge. He also argues that the testimony prejudicially overemphasized the gruesome condition of Parson's body long after the kidnapping.

We review a trial court's decision as to the relevance of evidence for abuse of discretion. *Love v. Commonwealth*, 55 S.W.3d 816, 822 (Ky. 2001). Whether relevant evidence should be excluded as unduly prejudicial or needlessly cumulative is also a matter we leave to the trial court's sound discretion. *Webb v. Commonwealth*, 387 S.W.3d 319, 325–26 (Ky. 2012). A trial court abuses its discretion when it decides an issue arbitrarily,

---

[4] KRE 402 provides in part: "Evidence which is not relevant is not admissible."

[5] KRE 403 states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."

4

unreasonably, unfairly, or unsupported by sound legal principles. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

The trial court reasoned that Dr. Burrows' vivid description of Parson's decaying body was relevant because it helped the jury understand the kidnapping in context—that it was not simply a kidnapping, but a kidnapping in which the victim was not released alive. The Commonwealth argues that the details assisted the jury by providing "background information on the crime;" in "assessing Gaither's [claim of self-defense];" and in "assessing the aggravating and mitigating circumstances" leading to an appropriate sentence.

We are unable to see how the ghastly details about the victim's remains shed any light on the sentencing issue beyond what was otherwise provided by the stipulated statement of evidence. The fact of Parson's death was not disputed. Parson's disappearance, together with the blood found in and about Parson's van, and a bullet hole, a bullet, and a shell casing found in the van, all of which were noted in the stipulated summary, established the proximate time of the kidnapping and of Parson's death. The gruesome details of the body's decomposition two months later did not augment the jury's appreciation of the gravity of the crime. Nevertheless, despite the irrelevance of the evidence and its cumulative nature, we fail to discern any substantial prejudicial effect upon Appellant's sentence. A non-constitutional evidentiary error is deemed harmless "if the reviewing court can say with fair assurance that the judgment was not substantially swayed by the error." *Winstead v. Commonwealth*, 283

5

S.W.3d 678, 688–89 (Ky. 2009). We are confident that the grim details provided by Burrows' trial testimony did not sway the verdict.

## II. THE VICTIM IMPACT TESTIMONY

Appellant asserts that he suffered manifest injustice because the trial court erroneously allowed victim impact testimony beyond the scope allowed by KRS 532.055(2)(a)7, and that the victim impact witness presented improper character testimony. Having failed to preserve the issue with a contemporaneous objection, Appellant seeks palpable error review.

> Under RCr 10.26, an unpreserved error may generally be reviewed on appeal *if* the error is palpable and *if* it affects an appellant's substantial rights. Even then, relief is appropriate only if the error resulted in manifest injustice. For an error to be palpable, it must be easily perceptible, plain, obvious and readily noticeable. Generally, a palpable error affects the substantial rights of the party only if it is more likely than ordinary error to have affected the judgment.

*Martin v. Commonwealth*, 409 S.W.3d 340, 344 (Ky. 2013) (internal quotation and citations omitted).

## A. Victim impact of testimony relating to several "victims" was proper.

The Commonwealth presented victim impact testimony through Parson's daughter, Leigh Ann Duke. Duke testified, not only about the impact of Parson's death upon her, but also how his death impacted Parson's widow, his son, and his grandchildren. Citing *Terry v. Commonwealth*, 153 S.W.3d 794 (Ky. 2005), Appellant asserts that Duke's testimony exceeded what was allowed by KRS 532.055(2)(a)7.

6

*Terry*, decided under the pre-2008 version of KRS 532.055(2)(a)7, held that when the direct victim of the crime was deceased and not related to the defendant, the victim impact testimony was limited to the impact of the crime upon a single "victim" designated in KRS 421.500(1) as (a) the spouse of the deceased, and if none, (b) an adult child; and if none, (c) a parent; and if none, (d) a sibling; and if none, a grandparent.

In 2008, presumably in response to *Terry*, the legislature removed the single victim limitation of KRS 532.055(2)(a)7 and KRS 421.500 and expanded the allowable scope of victim impact testimony to include the "impact of the crime upon the *victim or victims*," designated as a "spouse;" an "adult child;" a "parent;" a "sibling;" and "a grandparent." The Commonwealth argues that Duke's testimony comports with the post-*Terry*, version of KRS 532.055(2)(a)7.

The pre-2008 version construed by *Terry* was in effect at the time of the crime in 2001 and at the time of the first trial in 2004, but the amended version was in effect when the kidnapping penalty phase was retried. Oddly, neither party argues the retroactive application of the revised versions of KRS 532.055(2)(a)7 and KRS 421.500. Appellant argues the law as stated in *Terry* and never addresses the subsequent revisions of the statutes upon which *Terry* was based; the Commonwealth relies upon the current version of the statutes and never mentions *Terry* or the previous version of the statutes. Duke's testimony was proper under the current, post-*Terry* statute, but it would have been improper under the version of the statute cited in *Terry*.

7

The applicable version of the statutes regarding the scope of victim impact evidence is determined by our construction of the *ex post facto* clauses of the state and federal constitutions[6] and KRS 446.110[7] which govern the retrospective application of statutes in criminal cases.

> An *ex post facto* law is any law which criminalizes an act that was innocent when done, aggravates or increases the punishment for a Crime as compared to the punishment when the crime was committed, or alters the rules of evidence to require less or different proof in order to convict than what was necessary when the crime was committed."

*Buck v. Commonwealth,* 308 S.W.3d 661, 664 (Ky. 2010). The 2008 amendments to KRS 532.055(2)(a)7 and KRS 421.500 did not subject Appellant to prosecution for conduct that was not previously criminalized, and they did not subject him to increased or aggravated punishments for his previously-committed crimes. And, they did not reduce or change the evidence required to convict him of the offenses. At most, the amendments made non-essential evidence, which previously could not have been admitted, relevant and

---

[6] U.S. Const. art. I, § 10; Ky. Const. § 19(1).

[7] KRS 446.110: "No new law shall be construed to repeal a former law as to any offense committed against a former law, nor as to any act done, or penalty, forfeiture or punishment incurred, or any right accrued or claim arising under the former law, or in any way whatever to affect any such offense or act so committed or done, or any penalty, forfeiture or punishment so incurred, or any right accrued or claim arising before the new law takes effect, except that the proceedings thereafter had shall conform, so far as practicable, to the laws in force at the time of such proceedings. If any penalty, forfeiture or punishment is mitigated by any provision of the new law, such provision may, by the consent of the party affected, be applied to any judgment pronounced after the new law takes effect."

admissible. The application of the post-2008 version of the victim impact statutes did not unconstitutionally subject Appellant to an *ex post facto* law. Application of the 2008 amendments to KRS 532.055(2)(a)7 and KRS 421.500 did not violate Appellant's rights under KRS 446.110.

> Under KRS 446.110, unless the General Assembly unmistakably intends otherwise, substantive changes to criminal statutes will not be retroactively applied and offenses committed against the statute before its repeal, may thereafter be prosecuted, and the penalties incurred may be enforced. Substantive amendments are those which change and redefine the out-of-court rights, obligations and duties of persons in their transactions with others. By contrast, procedural amendments—those amendments which apply to the in-court procedures and remedies which are used in handling pending litigation—*are* to be retroactively applied (assuming no separation-of-powers concerns) so that the proceedings shall conform, so far as practicable, to the laws in force at the time of such proceedings.

*Rodgers v. Commonwealth*, 285 S.W.3d 740, 751 (Ky. 2009) (citations and internal quotation marks omitted).

The 2008 amendments to the victim impact statutes did not change or re-define any out-of-court rights, obligations or duties for which Appellant was being prosecuted; they changed no legal standard pertaining to his crimes or his punishment. KRS 446.110 did not bar the retrospective application of the post-2008 version of the victim impact statutes.

We are satisfied that the trial court correctly admitted Duke's victim impact testimony under the post-2008 version of the victim impact statutes. Moreover, for unpreserved trial error to be regarded on appeal as "palpable" and thus subject to corrective relief under RCr 10.26, "it must be easily perceptible, plain, obvious and readily noticeable." *Young v. Commonwealth*,

9

426 S.W.3d 577, 584 (Ky. 2014). The error alleged by Appellant cannot be characterized as plain, obvious and readily noticeable, and therefore, would not be regarded as palpable in any event.

**B. The improper testimony was not palpable error.**

Duke's victim impact testimony also included statements that her mother, Parson's widow, never felt safe after his kidnapping and death because she heard about "people being in jail and hiring somebody to come . . . ." She complained that "[Appellant] keeps putting us through this, over and over again. It just seems like something is always coming up, some parole or something always coming up and he sits over there smug, with that little smug look on his face."

Appellant cites *St. Clair v. Commonwealth*, 451 S.W.3d 597 (Ky. 2014), as support for his argument that Duke improperly assailed his character. *St. Clair* notes that "the purpose of [the victim impact statement] is to give the jury an understanding of the impact of the crime being tried, not the defendant's bad character or overall negative effect on society," when confronted with the issue of victim impact testimony having been given by one not a victim of the crime for which the defendant was being tried. *Id.* at 625.

Appellant did not contemporaneously object to Duke's testimony. Instead, hours later, after Duke had testified, he belatedly requested an admonition to the jury. We regard the matter as inadequately preserved and subject to review only for palpable error. "[T]he general rule is that an objection is not timely unless it is made 'as soon as the basis for objection

10

becomes apparent.'" *Winstead,* 283 S.W.3d at 688 (quoting Lawson, *The Kentucky Evidence Law Handbook (Fourth Edition),* p. 36 (2003)). Duke's expression of her family's fears and anguish over the crimes was proper victim impact testimony, but her complaints about the protracted litigation and her frustration that Appellant would be "coming up" for parole on the manslaughter conviction are not proper factors for the jury to consider in assessing Appellant's punishment for kidnapping. That testimony was clearly erroneous, but it was not adequately preserved for appellate review.

Upon consideration of the testimony in context with the other penalty phase evidence, we are satisfied that it was not so unduly prejudicial as to render the proceeding fundamentally unfair. *Martin v. Commonwealth,* 207 S.W.3d 1, 3 (Ky. 2006). The error that occurred was not palpable.

## III. THE TRIAL COURT DID NOT IMPROPERLY LIMIT APPELLANT'S PRESENTATION OF MITIGATION EVIDENCE.

Glenn Amerson is a pastor who became acquainted with Appellant in prison following the first trial. Amerson testified for Appellant in mitigation of punishment, explaining how he took Appellant's mother to the prison to visit Appellant. As Amerson testified about Appellant's kind interaction with his elderly mother, the Commonwealth asked to approach the bench. The Commonwealth complained that Amerson's testimony was more appropriately heard at final sentencing before the judge rather than as mitigation evidence in the penalty phase. Appellant's counsel stated she was "wrapping up" but argued that case law suggests there is no limit to mitigation evidence regarding leniency and character. After further discussion and verification that

11

Appellant's counsel was concluding her examination of Amerson, the trial court simply instructed her to move on. Counsel for Appellant asked Amerson one more question before finishing. Appellant asserts on appeal that the trial court abused its discretion by limiting appropriate mitigation evidence.

KRS 532.025(2)(b) provides that the defendant may introduce evidence in mitigation or in support of leniency during the penalty phase. Mitigation evidence is generally viewed as evidence "bearing on the defendant's character, prior record or circumstances of the offense, or relative to one of the specified statutory mitigating circumstances." *See Jacobs v. Commonwealth*, 870 S.W.2d 412, 419 (Ky. 1994), *overruled on other grounds*; *St. Clair*, 319 S.W.3d 300, 314-315. Citing *Skipper v. South Carolina*, 476 U.S. 1, 4-5 (1986), Appellant contends that testimony related to his institutional behavior, despite being after Parson's death and his first trial, was relevant mitigating evidence and should not have been limited.

During the bench conference that followed, Appellant's counsel argued that Amerson's observation of Appellant's interaction with his mother and his personal knowledge of Appellant was evidence of Appellant's current character. Amerson's testimony prior to the bench conference can be fairly described as fulfilling that evidentiary role, and the testimony was not stricken. Since no proffer of evidence was made, we cannot judge the admissibility of any additional testimony Amerson may have had to offer. Appellant does not show how he was prejudiced (if indeed he was) by the trial court's directive to "move

12

on" to another line of questioning or another witness. We are satisfied that the trial court acted within its sound discretion.

## IV. THE TRIAL COURT DID NOT ERR BY PERMITTING THE COMMONWEALTH TO USE GUILT-PHASE PHYSICAL EVIDENCE DURING ITS CLOSING ARGUMENT.

During the closing arguments of the penalty-phase retrial, and over Appellant's objection, the trial court permitted the Commonwealth to show the jury certain items of evidence that had been introduced as exhibits in the guilt phase of the first trial: specifically, Parson's dentures and car keys, which had been found on Appellant when he was arrested. The discovery of both items was noted in the stipulated summary of guilt-phase evidence.

Appellant contends that it was fundamentally unfair for the Commonwealth to display these items to the jury without giving Appellant's counsel advance notice, thus leaving Appellant no reasonable opportunity to respond to the demonstration. Appellant asserts that the physical evidence focused the jury's attention on the manslaughter and tampering convictions, rather than the kidnapping for which he was to be sentenced.

Generally, any evidence introduced at trial may be the subject of fair comment during closing argument. *Slaughter v. Commonwealth*, 744 S.W.2d 407, 412 (Ky. 1987). "Once introduced, however, such evidence may be the subject of fair comment during closing argument." *Hodge v. Commonwealth*, 17 S.W.3d 824, 853 (Ky. 2000). We do not require advance notice of what items of physical evidence will be exhibited during closing arguments. This principle does not change for a retrial of the penalty phase.

13

Subject to the discretion of the trial court, an item mentioned but not formally introduced during the trial may be displayed to the jury during closing arguments. *Edwards v. Whitley City Sales*, 246 S.W.2d 1018, 1020 (Ky. 1952) (No error occurred when "counsel exhibited to the jury a booklet about which he had previously interrogated the appellant but which had not been officially introduced in evidence.") We see no error in the Commonwealth's penalty-phase use of the items, and no abuse of discretion in the trial court's ruling in the matter.

## V. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Daviess Circuit Court sentencing Appellant to life imprisonment for the kidnapping of James Parson.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Margaret Anne Ivie
Assistant Public Advocate
Department of Public Advocacy

Kelsey Roth
Assistant Public Advocate
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

Matthew Robert Krygiel
Assistant Attorney General

14