RENDERED: JUNE 15, 2023
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0427-DG

COMMONWEALTH OF KENTUCKY                                    APPELLANT

V.
ON REVIEW FROM COURT OF APPEALS
NO. 2020-CA-1148
SCOTT CIRCUIT COURT NO. 17-CR-00269

KAYLA MELTON                                                  APPELLEE

**OPINION OF THE COURT BY JUSTICE NICKELL**

**<u>REVERSING AND REMANDING</u>**

The Scott Circuit Court excluded evidence of a guardianship order in a criminal prosecution against Kayla Melton for custodial interference and other related charges. A divided panel of the Court of Appeals concluded the trial court acted within its discretion to exclude the evidence because Melton's custodial rights as a biological parent were superior to any rights arising from the guardianship. Consequently, the majority concluded the evidence of guardianship would unduly prejudice Melton by confusing the jury. We granted discretionary review. Having carefully considered the law, record, and arguments of the parties, we reverse the Court of Appeals and remand to the Scott Circuit Court for further proceedings.

Before recounting the facts and procedural history of the present appeal, we note Melton has accepted the Commonwealth's statement of the facts

leading to the trial court's decision with the proviso "that this appeal deals with a pretrial motion and no factfinder has yet affirmed the facts as alleged in the record, and that Ms. Melton is not presently convicted of any charge." Therefore, for the purposes of our interlocutory review, we rely on the Commonwealth's statement of the case and our own review of the record.

Melton is the biological mother of T.K., a minor child. John Niemeier is T.K.'s biological father, although Niemeier was not listed on the birth certificate. Melton listed the name of her then-current boyfriend on the birth certificate. Following the child's birth, Melton and the child resided with Niemeier and his parents. Niemeier and Melton later moved with the child into an apartment of their own. In March 2014, they returned to live with Niemeier's parents. At some point, Niemeier and Melton ended their relationship. The child has resided with Niemeier and his girlfriend, Erica Osborne, since October 2016.

On July 17, 2017, the Scott District Court granted full guardianship of T.K. to Niemeier. Apparently, Melton agreed to grant limited guardianship of the child to Niemeier. However, when Melton failed to appear at the hearing, the district court awarded full guardianship to Niemeier.

On August 18, 2017, Melton allegedly broke into the residence of Niemeier's parents, where Osborne and T.K. were visiting, and assaulted Osborne before fleeing with the child. Osborne suffered bruising on her head, face, and arms. A Scott County Grand Jury indicted Melton on charges of first-degree burglary, custodial interference, and third-degree criminal mischief.

2

The indictment was later amended to include a charge of first-degree wanton endangerment.

Melton filed a motion in limine to exclude any reference to the guardianship order, asserting it was irrelevant or would be unduly prejudicial because guardianship is not equivalent to custody. The Commonwealth responded in opposition, arguing the guardianship order granted custody of the child to Niemeier such that Melton had no right to take the child. Following a hearing, the trial court entered a written order granting Melton's motion to exclude the guardianship order. The Commonwealth subsequently moved to amend the order and requested additional findings. The trial court upheld its prior ruling and made additional findings in an order entered on July 27, 2020. The Commonwealth filed a timely notice of appeal.[1]

A divided panel of the Court of Appeals affirmed. Based upon its review of Kentucky caselaw, the majority concluded "Melton's custody of T.K. at the time of the incident leading to the criminal charges was superior to Niemeier's guardianship by virtue of her status as his biological mother." The majority further stated "[t]here is no indication that Niemeier's status as a guardian gave him the legal right to keep T.K. away from Melton." Accordingly, the majority held "the trial court did not abuse its discretion in deciding that

---

[1] Kentucky Revised Statutes (KRS) 22A.020 authorizes the Commonwealth to pursue an interlocutory appeal from "an adverse decision or ruling" of the circuit court in a criminal case.

3

evidence of Niemeier's guardianship was of limited probative value and could potentially confuse the jury."

In dissent, then-Judge Kelly Thompson viewed the guardianship order as highly relevant to the custodial interference charge and opined any potential confusion could be remedied by an admonition, rather than complete exclusion of the order. The dissent stated the exclusion of the guardianship order would mislead the jury because the jury would lack critical information explaining the reasons why the child was residing in the care of Niemeier. The dissent also argued the Commonwealth was entitled to present a complete picture of the crimes charged, including relevant background information. We granted the Commonwealth's motion for discretionary review.

As a preliminary matter, Melton argues the trial court's order excluding the evidence of guardianship should be summarily affirmed because the Commonwealth failed to ensure the guardianship order was included in the appellate record. We conclude there is sufficient record to review the Commonwealth's claim of error on the merits.

The appellant has the duty to present a complete record on appeal. *Commonwealth v. Thompson*, 697 S.W.2d 143, 144 (Ky. 1985). When presented with an incomplete record, a reviewing court "must assume that the omitted record supports the decision of the trial court." *Id.* at 145. This Court "will not engage in gratuitous speculation . . . based upon a silent record." *Id.*

Melton cites *McDaniel v. Commonwealth*, 341 S.W.3d 89, 96 (Ky. 2011), in support of her argument that the trial court's order should be summarily

4

affirmed. In *McDaniel*, we refused to consider whether the admission of multiple autopsy photographs unduly prejudiced the defendant in a murder trial because the defendant failed to include the photographs in the appellate record. *Id.* In the absence of the photographs, we were "unable to assess the prejudicial value of the photographs." *Id.*

*McDaniel* is distinguishable from the present appeal because of the nature of the evidence at issue. The danger of undue prejudice associated with autopsy photographs lies in the gruesome and repulsive nature of the photograph's content. *See Ragland v. Commonwealth*, 476 S.W.3d 236, 248 (Ky. 2015). Therefore, any determination of the photographs' prejudicial effect, in the absence of the photographs, would be speculative.

On the contrary, in the present appeal, the substance of the offered evidence is known although the actual evidence was not presented to the trial court for consideration. *See Lanham v. Commonwealth*, 171 S.W.3d 14, 22 (Ky. 2005) (citing KRE 103 cmt. Subdivision (d) (1992))."[2] Custody, within the meaning of KRS Chapter 387, is incident to any award of guardianship over a minor. KRS 387.010(3)-(4); KRS 387.065(2); *see also* 39 C.J.S. *Guardian & Ward* § 56. The existence of the guardianship order is not in dispute. The basis of the trial court's evidentiary ruling was a legal conclusion concerning the legal effect of the relationship between guardianship and custody. The trial court concluded the guardianship evidence would confuse the jury "[b]ased on

---

[2] Kentucky Rules of Evidence.

the statutes and long-standing case law of Kentucky." Likewise, the Court of Appeals' majority based its conclusion on the application of caselaw. As such, the question of admissibility presented by this appeal centers on the legal effect of a guardianship order as opposed to the adequacy of a preliminary factual finding. *See* KRE 104. Therefore, we conclude there is an adequate basis to conduct our review.

While the nature of the guardianship order permits review in the context of the present appeal, appellate review concerning the admissibility of judicial records may not be equally available in other circumstances. We share the view of the Court of Appeals that our review is hampered by the incomplete record. When evidence has been excluded, the proponent of the evidence, to the extent practicable in the pre-trial context, should tender an offer of proof to facilitate appellate review even if the substance of the evidence has otherwise been made known to the trial court. *See Slone v. Commonwealth*, 382 S.W.3d 851, 856 (Ky. 2012).

The Commonwealth argues the majority of the Court of Appeals' panel improperly analyzed the admissibility of the guardianship order under KRE 403. Specifically, the Commonwealth argues the majority improperly focused on the relationship between custody and guardianship without undertaking a complete KRE 403 analysis. We agree.

A criminal defendant is entitled to present a complete defense. Likewise, the Commonwealth is entitled "to present a complete, un-fragmented, un-artificial picture of the crime committed by the defendant, including necessary

6

context, background and perspective." *Major v. Commonwealth*, 177 S.W.3d 700, 708 (Ky. 2005). "[W]here evidence is needed to provide a full presentation of the offense, or to 'complete the story of the crime,' . . . there is no reason to fragment the event by suppressing parts of the *res gestae*."[3] *Webb v. Commonwealth*, 387 S.W.3d 319, 326 (Ky. 2012). Additionally, the prosecution is permitted to introduce evidence that would "tend to prove any element of the charged crime." *See United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002) (cleaned up).

The Court of Appeals' majority did not question the relevance of the guardianship order and proceeded directly to analyze the evidence under KRE 403. KRE 403 provides for the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Our Kentucky rule is "virtually identical" to FRE[4] 403. *Anderson v. Commonwealth*, 281 S.W.3d 761, 764, n.10 (Ky. 2009). As such, federal decisions interpreting FRE 403 may be appropriately considered as persuasive authority. *See Kerr v. Commonwealth*, 400 S.W.3d 250, 261 (Ky. 2013). The danger arising from "confusion of the issues" refers to "evidence that creates side issues that distract jurors from the

---

[3] "Res gestae" means "[t]he events at issue, or other events contemporaneous with them." *Res Gestae*, *Black's Law Dictionary* (11th ed. 2019).

[4] Federal Rules of Evidence.

real issues of the case." *Ten Broeck Dupont, Inc. v. Brooks*, 283 S.W.3d 705, 715 (Ky. 2009).

When a party seeks to exclude relevant evidence under KRE 403, a trial court must: (1) assess the probative value of the evidence; (2) assess the "the probable impact of specified undesirable consequences likely" to result from the admission of the evidence; and (3) determine whether the harmful effects of the evidence exceed its probative value. *Webb v. Commonwealth*, 387 S.W.3d 319, 326 (Ky. 2012) (quoting *Partin v. Commonwealth*, 918 S.W.2d 219, 222 (Ky. 1996)). The exclusion of relevant evidence under KRE 403 is an extraordinary remedy that should be employed sparingly. Robert G. Lawson, *The Kentucky Evidence Law Handbook*, 2.15[2][b] at 104 (2020 ed.). Professor Lawson has indicated any doubts should be resolved in favor of admissibility. *Id.* The "tilt toward admission over exclusion" is "very powerful." *Id.* Further, in the criminal context, "it is a sound rule that the balance should generally be struck in favor of admission when the evidence indicates a close relationship to the offense charged." *United States v. Day*, 591 F.2d 861, 878 (D.C. Cir. 1978) (citing McCormick on Evidence (2d ed. 1972) p. 453 n. 55.). Our predecessor Court recognized the weight of authority in favor of admissibility and approvingly cited Judge Learned Hand:

> The exclusion of evidence, which does not too much entangle the issues and confuse the jury, merely because of its logical remoteness from the issue, is always a hazard, and is usually undesirable. *It is always hard to say what reasonable people may deem logically material, and all doubts should be resolved in favor of admission, unless some definite rule, like that against hearsay, makes that impossible.*

*Commonwealth v. Hillebrand*, 508 S.W.2d 566, 568 (Ky. 1974) (quoting *United States v. Matot*, 146 F.2d 197, 199 (2nd Cir. 1944) (emphasis added)).

We review evidentiary rulings for abuse of discretion. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). The "test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* While a trial court possesses broad discretion to resolve evidentiary disputes, "[t]his discretionary power does not, however, allow the Trial Court to exclude competent evidence which is essential and vital to a litigant's case unless there is a sound practicable reason for barring it." *Koloda v. Gen. Motors Parts Div., Gen. Motors Corp.*, 716 F.2d 373, 378 (6th Cir. 1983) (quoting *Bailey v. Kawasaki-Kisen, K.K.*, 455 F.2d 392, 398 (5th Cir. 1972)). Specifically, on review of a trial court's ruling under KRE 403, we must "view the evidence in the light most favorable to its proponent, giving the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Major*, 177 S.W.3d at 707 (citing *Turpin v. Kassulke*, 26 F.3d 1392, 1399-1400 (6th Cir. 1994)).

To determine whether evidence of the guardianship order would unduly prejudice Melton by confusing the jury, we must examine the elements of the custodial interference statute considering the specific circumstances of the underlying case. KRS 509.070 sets forth the elements of custodial interference as follows:

> (1) A person is guilty of custodial interference when, knowing that he has no legal right to do so, he takes, entices or keeps from

9

lawful custody any mentally disabled or other person entrusted by authority of law to the custody of another person or to an institution.

(2) It is a defense to custodial interference that the person taken from lawful custody was returned by the defendant voluntarily and before arrest or the issuance of a warrant for arrest.

(3) Custodial interference is a Class D felony unless the person taken from lawful custody is returned voluntarily by the defendant.

"Custodial interference statutes are intended to protect any custodian from deprivation of his or her rights." *Karsner v. Commonwealth*, 582 S.W.3d 51, 54 (Ky. App. 2018). Neither KRS 509.010 nor KRS 500.080 defines the terms "lawful custody" or "entrusted by authority of law to the custody of another person." However, Model Penal Code § 212.4, upon which KRS 509.070 is based, specifically references interference with "the custody of [a] parent, guardian or other lawful custodian."

Indeed, Kentucky law recognizes guardianship as a form of lawful custody. KRS 387.010(3) defines "guardian" to mean "an individual, agency, or corporation appointed by the District Court to have care, custody, and control of a minor and to manage the minor's financial resources." KRS 387.065(2) mandates a guardian to "take custody of the person of the ward and establish the ward's place of abode within the Commonwealth." There is no difference between a guardian and a limited guardian with respect to the right to custody of the ward's person. *Compare* KRS 387.010(3)-(4). A guardian stands in loco parentis. *Rudd v. Fineberg's Trustee*, 277 Ky. 505, 126 S.W.2d 1102, 1103 (1939). Nevertheless, the appellate courts of Kentucky have long recognized the superiority of parental custody rights to the rights of guardianship when

10

confronted with competing claims. *Mason v. Williams*, 165 Ky. 331, 176 S.W. 1171, 1173 (1915).

Any reliance on *Hicks v. Halsey*, 402 S.W.3d 79, 83 (Ky. App. 2013) and *R.T. v. D.R.*, No. 2008–CA–000559–ME, 2008 WL 4754829 at *4 (Ky. App. Oct. 31, 2008), to justify the exclusion of the guardianship evidence in the present case is misplaced. Both decisions involved a direct custody dispute between a parent and guardian. Neither decision concerned the admissibility of a guardianship order in a subsequent criminal proceeding. Further, the *Hicks* decision simply held "guardianship is not the equivalent of custody" such that a mother's motion to set aside a guardianship order does not constitute the commencement of an action to *regain* custody for the purpose of tolling the time period for establishing de facto status. 402 S.W.3d at 83. The *Hicks* decision did not hold that guardianship evidence carries little probative value in a custody decision. On the contrary, guardianship evidence was highly relevant to establishing whether the guardian was the child's primary caretaker.

The *Hicks* Court cited *R.T.* for the proposition a voluntary guardianship agreement between a mother and a non-parental couple did not divest the mother of her superior custody rights. *Id.* While a guardianship may not divest a parent of *superior* custody rights, it does not necessarily follow that a guardian, by definition, lacks any colorable claim to custody. In recognizing that a guardianship does not divest a parent of superior custody rights, the Court of Appeals acknowledged a guardianship agreement involves some

11

degree of formal relinquishment of custody. *R.T.*, 2008 WL 4754829 at \*4.

Therefore, the inequivalence between parental custody and guardianship is a

matter of priority and degree. Any dissimilarity between parental custody and

guardianship does not equate to undue prejudice in the context of the present

appeal.

To find Melton guilty of custodial interference, the Commonwealth must

produce sufficient evidence that, knowing she had no right to do so, she

engaged in "overt conduct" that interfered with Niemeier's lawful custody.

*Karsner,* 582 S.W.3d at 54. This Court has directly held a jury is entitled to

determine the essential elements of a criminal offense. *Thacker v.*

*Commonwealth,* 194 S.W.3d 287, 290 (Ky. 2006) (first citing *Apprendi v. New*

*Jersey,* 530 U.S. 466, 477 (2000); then citing *United States v. Gaudin,* 515 U.S.

506, 511-15 (1995)); *called into doubt on other grounds by Harp v.*

*Commonwealth,* 266 S.W.3d 813, 818 (Ky. 2008).

For example, in the context of a persistent felony offender (PFO)

sentencing enhancement, the admissibility of a defendant's prior conviction

depends on "proof of the fact of 'previous felony convictions' and not their

underlying validity." *McGuire v. Commonwealth,* 885 S.W.2d 931, 937 (Ky.

1994). A collateral attack on the validity of a prior conviction is not a basis to

exclude the conviction from evidence. *Id.* We have also held a defendant "may

not launch a collateral attack on the validity of an emergency protective order

in a subsequent prosecution for violation of that order." *Wood v.*

*Commonwealth,* 178 S.W.3d 500, 513 (Ky. 2005). Additionally, "validity of a

domestic violence order (DVO) is not a proper subject of inquiry when it is offered as proof of an aggravating circumstance in a capital murder prosecution or to prove the criminal violation of the DVO." *Id.* at 512 (quoting *Gutierrez v. Commonwealth*, 163 S.W.3d 439, 442 (Ky. 2005)). "[W]hether a court order is right or wrong, it is the duty of the parties to abide by its mandates so long as it remains in effect." *Id.* The same reasoning applies to whether proof of a guardianship order is competent evidence in a prosecution for custodial interference.

Indeed, far from distracting the jury from the "real issues," the guardianship evidence is essential and vital to the Commonwealth's case because it concerns an essential element of custodial interference. As such, the resolution of this issue on a pre-trial evidentiary ruling is premature and inappropriate. Moreover, the absence of the evidence would produce a baffling lacuna in the story of the crimes alleged. The guardianship order provides crucial context explaining the child's presence at the residence of Niemeier's parents during the alleged offenses. Without this context, the Commonwealth's ability to convict Melton on the remaining charges may also be imperiled because the jury's perception of the parties' actions in relation to the child would necessarily be skewed. In other words, the exclusion of the guardianship evidence would tend to mislead and confuse the jury in equal measure as its admission. As then-Judge Thompson aptly stated in his dissenting opinion:

> Simply put, the majority opinion and the circuit court are focused on the wrong thing by evaluating whether custody is superior to

13

guardianship and then using this analysis to justify excluding such evidence. Whether or not custody is superior to guardianship, such a legal conclusion is not an adequate basis for prohibiting the introduction of the guardianship order.

*Melton*, No. 2020-CA-1148-MR, 2021 WL 3935374 at *5 (Thompson, J., dissenting).

Based upon the foregoing, we conclude the trial court abused its discretion by failing to apply the proper KRE 403 analysis. The scope of the present opinion is limited to the admissibility of the guardianship evidence. We express no opinion on the ultimate resolution of the underlying charges.

Accordingly, we reverse the opinion of the Court of Appeals and remand to the Scott Circuit Court for further proceedings consistent with this opinion.

VanMeter, C.J.; Bisig, Conley, Keller, Lambert, and Nickell, JJ., sitting. Bisig, Conley, and Lambert, JJ., concur. VanMeter, C.J., dissents by separate opinion which Keller, J., joins. Thompson, J., not sitting.

VANMETER, C.J., DISSENTING: I respectfully dissent. To begin, no one should interpret this dissent as countenancing, to any degree, the apparent actions of Melton in breaking into a residence and assaulting someone to gain access to her child. The only issue in this appeal is whether the trial court abused its discretion in suppressing evidence of a district court order granting guardianship of that child to Niemeier.

The trial court has a general obligation as evidentiary gatekeeper to screen evidence to ensure that the jury does not hear irrelevant or inadmissible

14

evidence. *See, e.g., Clark v. Commonwealth,* 223 S.W.3d 90, 95 (Ky. 2007) (acknowledging "the trial court's unique role as gatekeeper of evidence"); *Dunnaway v. Commonwealth,* No. 2019-SC-0730-MR, 2021 WL 234773, at *2–3 (Ky. Jan. 21, 2021) ("[W]e are unconvinced the trial court abdicated its role as gatekeeper in this evidentiary matter[.]"); *Leatherman v. Commonwealth,* 357 S.W.3d 518, 529 (Ky. App. 2011); Kentucky Rule of Evidence (KRE) 402 ("Evidence which is not relevant is not admissible."); KRE 103(c) ("Hearing of jury. In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury."). "Trial courts enjoy substantial discretion in admitting or excluding evidence at trial. Indeed, there are many instances where a trial court will not err regardless of whether the evidence is admitted or excluded because of this broad discretion." *Daugherty v. Commonwealth,* 467 S.W.3d 222, 231 (Ky. 2015). Those evidentiary determinations will be reversed on appeal only if shown to be arbitrary, unreasonable, or unsupported by sound legal principles. *Gaither v. Commonwealth,* 521 S.W.3d 199, 205 (Ky. 2017).

As a result of the incident at the heart of this matter, Melton has been indicted for custodial interference. To prove this crime, the Commonwealth is required to show that an individual, "knowing that he has no legal right to do so, [] takes, entices or keeps from lawful custody any mentally disabled or other person entrusted by authority of law to the custody of another person or to an institution." KRS 509.070(1). A guardian of a minor child is defined as an

15

individual "appointed by the District Court to have care, custody and control of a minor and to manage the minor's financial resources[,]" KRS 387.010(3), and is directed to "[t]ake custody of the person of the ward and establish the ward's place of abode[.]" KRS 387.065(2)(a).

Our case law, as cited by the trial court and the Court of Appeals, recognizes that when a guardianship is ordered by the district court with the agreement, and perhaps on the petition, of a parent, the resulting guardianship is not given preclusive effect. *See Hicks v. Halsey*, 402 S.W.3d 79, 83 (Ky. App. 2013) (stating that guardianship is not necessarily the same as legal custody); *see also R.T. v. D.R.*, No. 2008-CA-0559-ME, 2008 WL 4754829 (Ky. App. Oct. 31, 2008) (holding that a district court guardianship order entered in favor of non-parental couple with cooperation of mother did not divest mother of her superior custody rights, applying factors set forth in *Vinson v. Sorrell*, 136 S.W.3d 465, 470 (Ky. 2004)). In fact, policy reasons may militate against the rule of equating guardianship with legal custody:

> [T]he family court did not cite any authority in support of its conclusion that a temporary agreement to guardianship amounts to the relinquishment of a parent's superior right to custody, nor do D.R. and V.R. cite us to such authority, nor have we been able to locate such authority. In addition, we are persuaded that such a rule would be a counterproductive public policy because such a penalty for agreeing to a temporary guardianship would discourage the use of the guardianship procedure, a procedure which has definite advantages over a less formal relinquishment of custody. *See, e.g.*, KRS 387.065 (Granting guardian powers of a parent regarding the ward's support, care, and education).

*R.T.*, 2008 WL 4754829, at *4; *see also Ridgeway v. Walter*, 281 Ky. 140, 146-47, 133 S.W.2d 748, 751 (1939) (noting "[s]o far as the natural parents are

16

concerned it is usually held that their right to custody of their child is superior to any right of the guardian[,]" and guardian's statutory entitlement to custody is not absolute); *Johnson v. Cook,* 274 Ky. 841, 120 S.W.2d 675 (1938) (upholding parent's superior right to custody of child notwithstanding appointment of guardian); *Mason v. Williams,* 165 Ky. 331, 335-36, 176 S.W. 1171, 1173 (1915) (noting that "[i]t is **not** to be understood that the rights of the statutory guardian as to the custody of his ward are superior to the rights of the parent in that respect, when the guardian is a person other than the parent[]") (emphasis added); *Garth v. City Sav. Bank,* 120 Ky. 280, 283-84, 86 S.W. 520, 520-21 (1905) (appointment of guardian following father's death did not divest mother of her status as child's natural guardian, notwithstanding statute giving guardian custody of child's person).

The custody and education of one's own children has been recognized as one of the most fundamental of all rights, which is protected by the Due Process Clause of the Fourteenth Amendment. *Meinders v. Middleton,* 572 S.W.3d 52, 60 (Ky. 2019); *Walker v. Blair,* 382 S.W.3d 862, 870 (Ky. 2012). Consequently, statutes that impact or circumscribe that right typically require adversarial hearings with evidentiary standards and rights of appeal. *See, e.g,* KRS 403.270(2) (custody determinations in best interest of child by preponderance of the evidence to be determined by consideration of eleven statutory factors); KRS 625.090(1) (termination of parental rights to be based on clear and convincing evidence). In such cases, following a full and complete judicial termination of custody, our legislature has determined that such

17

orders are protected and violations could result in criminal prosecutions. KRS 509.070. Simply put, a guardianship order entered with the agreement of a parent does not carry that same imprimatur, because neither the parent nor the child is relieved of natural obligations to the other. Parents who have not been found unfit do not relinquish their fundamental liberty interest in raising their children by consenting to a guardianship. *In re Guardianship of W.L.*, 467 S.W.3d 129, 133 Ark. (2015) (internal citation and quotation omitted).[5]

The forementioned purpose and effect of a guardianship order must be considered in balancing its probative value. KRE 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Professor Lawson has opined that KRE 401 and 402 give a very powerful and great inclusionary thrust to the rules of evidence, but that these rules also created the need for KRE 403 as a check on this thrust, and that KRE 403 is the "most important of all the exclusionary rules." Robert G. Lawson, Ky. Evidence Law Handbook, § 2.15[1] (2020). KRE 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." The trial court is to

---

[5] W.L. involved a father's attempt to revoke his consent to a guardianship order that played out over a five-year period. While the case involves the interpretation of an Arkansas guardianship statute, the legal proposition stated comports with our case law that a consensual guardianship is not the equivalent of legal custody.

make this exclusionary determination by assessing (i) the evidence's probative worth; (ii) probable impact of the evidence in terms of undue prejudice; and (iii) whether its probative worth is substantially outweighed by its undue prejudice. *Little v. Commonwealth*, 272 S.W.3d 180, 187 (Ky. 2008). Furthermore, and as noted by Professor Lawson, "both the language of the rule (especially the phrase 'may be excluded') and legislative history suggest that trial judges have *great leeway* in this area." Lawson, Ky. Evidence Law Handbook, § 2.15[2][a].

Our caselaw is clear that a guardianship order is not tantamount to establishing custody. Here, the introduction of the order into evidence will no doubt confuse the jury as to those rights and appear to give the imprimatur of custody in favor of Niemeier, when, in reality, the situation is far more dynamic. The danger of undue prejudice and juror confusion resulting from its introduction outweighs its probative value.

Further, even were I inclined to agree that the guardianship order should have been admitted, I would still conclude that the trial court did not violate its discretion by failing to do so. "A trial court abuses its discretion when it decides an issue arbitrarily, unreasonably, unfairly, or unsupported by sound legal principles." *Gaither*, 521 S.W.3d at 205. The decision to exclude relevant evidence is left to the sound discretion of the trial court. *Webb v. Commonwealth*, 387 S.W.3d 319, 325-26 (Ky. 2012). In this case, the trial court's decision to exclude the guardianship order was not arbitrary, unreasonable, or unsupported by sound legal principles. Indeed, as the prior discussion illustrates, a colorable argument exists that the guardianship order

19

was of dubious relevancy to the charged offense and its introduction would only serve to confuse the jury. Additionally, the prejudicial effect of the guardianship order cannot be understated. To exclude a piece of evidence so damaging to the defense in light of its questionable value to the jury was well within the discretion of the trial court.

Because the guardianship order was not dispositive of custodianship and accordingly of limited relevance to the charge of custodial interference, and because the exclusion of the order was within the sound discretion of the trial court, I would affirm the Court of Appeals.

Keller, J., joins.

COUNSEL FOR APPELLANT

Daniel Cameron
Attorney General of Kentucky

Kristin L. Conder
Assistant Attorney General


COUNSEL FOR APPELLEE:

Molly Mattingly
Department of Public Advocacy
Assistant Public Advocate