NICKELL, JUDGE:
G.P. ("Father") appeals from an order of the Kenton Circuit Court, Family Division, committing his son, M.P. ("Child"),[2] to the Cabinet for Health and Family Services ("CHFS"). Father urged custody be awarded to K.P. ("Stepmother")-the estranged wife he attempted to make Child's guardian by executing a Power of Attorney ("POA") and whom CHFS approved and also proposed as Child's custodian. Alternatively, Father suggested three blood relatives as potential custodians. Following review of the record, briefs and law, we affirm.
*487 FACTS
A termination of parental rights ("TPR") petition was pending against R.Y. for twenty months. During that time, Child was committed to CHFS which placed him in foster care with J.F. ("Foster Mother"). When it was determined Child was not R.Y.'s son, Father acknowledged paternity and received custody of Child in November 2017. On June 19, 2018, while Father had custody of Child-but Child was physically with Stepmother at a different residence-Father was arrested by federal authorities and jailed on charges of trafficking[3] in heroin and fentanyl; he denied the charges.
The arrest occurred at Father's two-bedroom apartment in Covington, Kentucky. While executing a search warrant of the apartment, officers seized-from what appeared to be a child's bedroom containing toys-a large quantity of drugs and a handgun without a lock or device to prevent firing.
Following Father's arrest, CHFS petitioned for temporary removal of Child from Father, proposing Stepmother as temporary custodian. Child was represented by a guardian ad litem ("GAL") who proposed Child be returned to CHFS for placement with Foster Mother. While the petition was pending, Father executed a POA[4] purportedly naming Stepmother as Child's guardian and custodian. The trial court excluded the POA from the record and there was no attempt to introduce it by avowal. Content of the purported POA is unknown.
No sworn testimony was taken at the temporary removal hearing. Discussions between attorneys, the GAL and the CHFS caseworker revealed during the six months Father had custody of Child, Stepmother likely provided the majority of Child's care, control and supervision during the week-when he was not at daycare-and Child spent most weekends with Foster Mother who had planned on adopting Child before Father acknowledged paternity. The GAL argued Foster Mother occasionally picked up Child from daycare during the week. Father and Stepmother are married, but separated in January 2018 and live apart.
It was determined Stepmother is biologically unrelated to Child, and in the trial court's words, had possession of Child "only because of a romantic relationship with the biological dad, and [Stepmother] tells you they split up." The GAL objected to Stepmother being in the courtroom during the hearing because she was not a party. The petition, which did not seek an emergency custody order ("ECO"), identified Stepmother as a "person exercising custodial control over Child." Thereafter, the trial court excluded Stepmother from the confidential proceeding because she was neither a parent nor a named party. The trial court further excluded Stepmother from consideration as a custodian because she was not Child's parent or a blood relative, terming Stepmother a "stranger" to the boy.
*488 CHFS recommended Child be placed with Stepmother. The GAL urged Child be placed with Foster Mother, arguing she had an ongoing relationship with Child, was caring for him on weekends and occasionally during the week, and Stepmother had to know of Father's illegal drug activities because she was driving a new Camaro he bought for her and without proceeds from illegal drug deals he lacked independent means to buy a new car. The caseworker confirmed Child would be placed with Foster Mother if committed to CHFS.
When the hearing ended, the trial court signed an ECO, finding service could not be made on the biological mother; no available relatives had been served and brought before the Court; and, Child was "in immediate danger due to the parent's failure or refusal to provide for the safety or needs of the child." KRS[5] 620.060(1)(c). The last finding was based on Father's arrest, as well as drugs and an unsafe weapon being found in the apartment. Custody of Child was awarded to CHFS which placed him with Foster Mother where he is thriving.
Father telephonically attended the removal hearing on June 28, 2018, where the trial court again found Stepmother was not a party, was biologically unrelated to Child, and lacked standing, noting Stepmother had separated from Father and was living apart from him at a different address. Without elaborating, counsel for Father argued the "emergency" the trial court believed existed when it signed the ECO did not really exist. Counsel also suggested standing was a non-issue because Stepmother had exercised custodial control over Child and had been named in the POA before the trial court awarded custody to CHFS. The trial court said it was unconvinced of the accuracy of counsel's bare suggestion. Counsel reiterated Child should be placed with Stepmother because she was Father's choice, as reflected in the POA which purportedly attempted to make her Child's guardian. Although providing no details, counsel alleged Stepmother had established and maintained a bond with Child.
The GAL again strongly opposed Stepmother receiving custody, arguing it was in Child's best interest to be placed with Foster Mother to create needed long-term permanency. The GAL again emphasized the POA was signed after Father's arrest, noted Father's current federal charges were in addition to previously filed federal charges, and Child's biological mother had not successfully worked a case plan since the TPR proceeding against R.Y. which resulted in Child being awarded to CHFS and being placed with Foster Mother for twenty months.
The trial court was persuaded by the GAL's position, highlighting Foster Mother's lengthy, ongoing relationship with Child in comparison to Stepmother's short time with him about which there was no proof of a true or thriving relationship. Additionally, Foster Mother was prepared to adopt Child during his first stint in foster care, and there was the looming specter of Father facing extended federal incarceration. The trial court left Child in CHFS custody.
Detective Rogers of the Covington Police Department participated in the search of Father's apartment. He testified at the adjudication hearing a large quantity of narcotics and a handgun were seized from a child's bedroom in the apartment where mail, car titles and a driver's license bearing Father's name were found. No child was present during the search. Detective *489 Rogers did not know whether the handgun was loaded, but testified he did not believe it had a lock, safety mechanism or device to keep it from firing.
Father's attempt to introduce the POA was again rejected. At the conclusion of the hearing, the trial court again found Child was neglected, noting the handgun-lacking a safety mechanism-was found in the child's bedroom. According to the trial court, lack of a "device to keep it from firing" was "neglectful and dangerous for a child."
At the disposition hearing, Father suggested Stepmother and three blood relatives who could potentially exercise custody over Child. The CHFS caseworker explained each blood relative had been considered, but rejected.
Father's mother, ("R.H."), was rejected because an adult son lives in her home. The adult son was recently charged with fourth degree assault (domestic violence) and is a convicted cocaine trafficker. According to Father's attorney, R.H. had said she would do anything necessary to have custody of Child, but there was no indication she had taken any steps to evict her adult son from her home. Additionally, R.H. had told the caseworker she has no bond with Child, seeing him only at family functions.
A female relative named "E.P." was considered. A convicted heroin trafficker, E.P. was rejected. Father's eldest son-also named G.P.-was charged with drug trafficking in Ohio in 2013. He was considered and rejected.
When the disposition hearing concluded, the trial court waived reasonable efforts by CHFS, set adoption as the permanency goal, and scheduled a TPR hearing. The trial court's oral findings were reflected in a written order from which Father now appeals, arguing: no "emergency" required removal of Child from Stepmother; Child was not "neglected" merely because Father was under arrest; and, Child should have been placed with Stepmother or a family member, rather than being committed to CHFS and ultimately placed for adoption by Foster Mother.
ANALYSIS
At the outset, we comment on Father's noncompliance with CR[6] 76.12(4)(c) mandating the appellant's brief "shall" contain specific items.
"Shall" does not mean "may" but is mandatory. Woods v. Commonwealth , Ky., 305 S.W.2d 935 (1957) ; O'Bryan v. Massey-Ferguson , Ky ., 413 S.W.2d 891 (1966).
Fayette County Ed. Ass'n v. Hardy , 626 S.W.2d 217, 220 (Ky. App. 1980). See also Bowen v. Commonwealth ex rel. Stidham , 887 S.W.2d 350, 352 (Ky. 1994) (" 'Shall' means shall"). CR 76.12(4)(c)(v) requires the brief for appellant to contain:
[a]n "ARGUMENT" conforming to the statement of Points and Authorities, with ample supportive references to the record and citations of authority pertinent to each issue of law and which shall contain at the beginning of the argument a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner .
(Emphasis added.)
The argument portion of Father's brief-covering less than two and one-half pages-contains no statement of preservation for any of the three alleged errors discussed. A statement of preservation is vitally important because a "new theory of error cannot be raised for the first time on *490 appeal." Jones v. Livesay , 551 S.W.3d 47, 52 (Ky. App. 2018) (quoting Springer v. Commonwealth , 998 S.W.2d 439, 446 (Ky. 1999) ). Stating how and where an issue is preserved ensures this Court the issue being raised was argued to the trial court, the trial court had an opportunity to correct any error, and the issue is properly before us.
The statement of preservation determines whether we apply a recognized standard of review or consider granting a request for palpable error review of an unpreserved claim. Oakley v. Oakley , 391 S.W.3d 377, 380 (Ky. App. 2012). Requiring a statement of preservation serves as a check for the practitioner-a forced review of the record. If the issue sought to be raised was not argued to the trial court, palpable error review may be requested-if appropriate-or the issue must be abandoned.
Father has not claimed any errors raised in this Court were argued to the trial court. More particularly, he has not told us where and how any claim was preserved, if at all. Nor has he requested palpable error review. "[I]it is not the job of this or any appellate court to scour a vast record to determine whether that record indeed supports a party's assertions." Walker v. Commonwealth , 503 S.W.3d 165, 171 (Ky. App. 2016) (citing Phelps v. Louisville Water Co., 103 S.W.3d 46, 53 (Ky. 2003) ; Dennis v. Fulkerson, 343 S.W.3d 633, 637 (Ky. App. 2011) ).
As an appellate Court, we review for error. A "nonruling is not reviewable when the issue has not been presented to the trial court for decision." Jones , 551 S.W.3d at 52 (quoting Turner v. Commonwealth , 460 S.W.2d 345, 346 (Ky. 1970) ). "The underlying principle of [ CR 76.12 ] is to afford an opportunity to the trial court, before or during the trial or hearing, to rule upon the question raised." Id. (quoting Hartsock v. Commonwealth , 382 S.W.2d 861, 864 (Ky. 1964) ).
Additionally, while Father's statement of the case contains a smattering of citations to the written and video record, the entire brief cites only one case- Hicks v. Halsey , 402 S.W.3d 79, 83 (Ky. App. 2013) -a case pertaining primarily to de facto custodian status, an issue argued neither at trial nor on appeal. Hicks does distinguish guardianship from custody, and confirms "the matter of custody is subject to control by the court." Id. We hardly deem citation to a single case for three alleged errors "ample ... citations of authority." CR 76.12(4)(c)(v).
Failure to obey CR 76.12"is not automatically fatal," but we could exercise our discretion and strike Father's brief or dismiss his appeal. Curty v. Norton Healthcare, Inc. , 561 S.W.3d 374, 378 (Ky. App. 2018). Due to the sensitive nature of custody issues, we have chosen not to dismiss the appeal or strike the brief, but instead will limit our review and caution counsel to heed the rules of appellate practice in future appeals.
We acknowledge the record in this case is not "vast," Walker , 503 S.W.3d at 171 -just one volume of written record and five hearings-but we have no duty to scour any of it for proof of preservation. Nonetheless, in reviewing the entire record we discovered counsel did suggest-without elaboration or legal citation-the "emergency" on which the trial court based the ECO did not actually exist because Father had executed a POA purportedly naming Stepmother as Child's guardian. We consider the first issue preserved and properly before us.
The POA not being in the record, we cannot confirm what it said, what it purported to do, nor whether it was properly *491 executed. We are told only it was signed on June 26, 2018, more than a week after Father was arrested on June 19, 2018. Father's counsel has not challenged exclusion of the POA.
When the trial court signed the ECO, service had not been made on either of Child's biological parents and no "relatives" had been identified as prospective custodians. The trial court's choices were extremely limited. Father was in jail; biological Mother could not be located; and Stepmother, being biologically unrelated to Child, was a "stranger" to him in the trial court's eyes.
Father has not cited any authority by which Stepmother had standing to seek Child's custody. Father has not argued Stepmother met the requirements of a de facto custodian or could assert standing as a "person exercising custodial control or supervision (PECCS)"[7] -as CHFS identified her in the petition. Furthermore, Father has not established the POA he purportedly executed made Stepmother Child's legal guardian. Stating a premise without any legal support does not establish the premise.
The record in this case is exceptionally lacking in basic detail. It does not indicate when Father and Stepmother married; no one introduced a marriage certificate. The CHFS caseworker confirmed Stepmother had said she and Father were separated and she was living apart from him at her own residence. There was no suggestion of an impending reconciliation between the two. There was also no indication of how Stepmother interacted with Child or spent her time with him. The record does not reveal whether she was a caregiver, cook, chauffeur-all three or none.
Despite the lack of numerous details, there was a preponderance of evidence[8] upon which to find existence of an emergency. Child was born in November 2015. Father acknowledged paternity and was awarded custody of Child in November 2017. The FBI arrested Father on drug charges in June 2018 and held him in jail on a $1 million bond, making it impossible for him to care for 31-month-old Child. Father was arrested in his two-bedroom apartment where drugs and a handgun were seized from a child's bedroom. The trial court orally found lack of a "device to keep [the handgun] from firing" was "neglectful and dangerous for a child." The trial court's finding of "immediate danger" under KRS 620.060(1)(c) was supported by the record.
A trial court has broad discretion in its determination of whether a child is neglected. Dep't for Human Res. v. Moore , 552 S.W.2d 672, 675 (Ky. App. 1977). A trial court's findings regarding the weight and credibility of the evidence "shall not be set aside unless clearly erroneous[.]" CR 52.01.
"Under this standard, an appellate court is obligated to give a great deal of deference to the trial court's findings and should not interfere with those findings unless the record is devoid of substantial evidence to support them." D.G.R. v. Commonwealth, Cabinet for Health & Family Servs , 364 S.W.3d 106, 113 (Ky. 2012) (citations omitted). Substantial evidence has been defined *492 as some evidence of substance and relevant consequence, having the fitness to induce conviction in the minds of reasonable people. Smyzer v. B.F. Goodrich Chem. Co. , 474 S.W.2d 367, 369 (Ky. 1971).
Cabinet for Health and Family Services on behalf of C.R. v. C.B. , 556 S.W.3d 568, 574 (Ky. 2018). We discern no error in the trial court committing Child to CHFS.
As for the second issue asserted in this Court, we never heard defense counsel argue to the trial court Father's arrest, in and of itself, was not "neglect" requiring Child's removal from Stepmother and commitment to the CHFS. We have no authority to consider an issue raised for the first time on appeal and say nothing more about this unpreserved claim. Jones , 551 S.W.3d at 52.
Finally, Father argues Child should have been placed with Stepmother or one of three blood relatives he proposed. At the disposition hearing on September 18, 2018-again citing no statutory or case law-defense counsel mentioned the legislature's preference for family placement and the overburdened foster care system. Some basis exists for review of Father's third claim.
The General Assembly has stated a preference for family placement with "qualified relatives of the child." KRS 620.090(1). Stepmother is biologically unrelated to Child. Despite CHFS approving Stepmother as a potential custodian, no proof was introduced to overcome her status as a "stranger" and establish she had standing to seek custody. The trial court properly excluded Stepmother as a potential custodian.
Father also proposed three blood relatives-his mother, his eldest son and a woman with the same last name. CHFS did not have issues with Father's mother, but a convicted cocaine trafficker was living in her home and she had not moved to evict him, making her home an unsuitable candidate. The other two relatives were also drug traffickers and eliminated from consideration.
While CHFS must consider relative placement over other options, it is not required to choose relative placement over other options. P.W. v. Cabinet for Health and Family Services , 417 S.W.3d 758, 761 (Ky. App. 2013) (citing Baker v. Webb , 127 S.W.3d 622, 625 (Ky. 2004) ). Evaluating its options, the trial court determined "the least restrictive appropriate placement available" was Foster Mother. KRS 620.090(2). Foster Mother is the adult with whom Child has spent the majority of his young life, the only mother he has ever known, and the person in whose care he is thriving.
For the reasons stated, the order entered on September 19, 2018, by the Kenton Circuit Court, Family Division, is AFFIRMED.
MAZE, JUDGE, CONCURS.
K. THOMPSON, JR., JUDGE, CONCURS IN RESULT ONLY.

Child was born on November 30, 2015. N.Y. is his biological mother. Her parental rights have not been terminated, nor have those of Father. N.Y. was named in a separate DNA petition. Attempted service on her failed, she appeared at no hearings and she filed no pleadings. She was, however, represented by appointed counsel. According to the DNA petition seeking temporary removal of Child from Father's custody filed by CHFS on June 21, 2018, N.Y. "was not considered for placement due to extensive [Child Protective Services] history including the removal of several children from her custody." The dispositional report states N.Y. has had no involvement with Child since February 2016. N.Y. is not a party to this appeal.

The status of the drug charges is not reflected in the record before us.

According to Father's attorney, the POA was executed on June 26, 2018. When counsel attempted to introduce the POA, the GAL objected because it was signed after Father's arrest on June 19, 2018. Counsel did not challenge the relevance of the date the POA was executed.

Kentucky Revised Statutes.

Kentucky Rules of Civil Procedure.

Defined as "a person or agency that has assumed the role and responsibility of a parent or guardian for the child, but that does not necessarily have legal custody of the child[.]" KRS 600.020(47).

"The burden of proof shall be upon the complainant, and a determination of dependency, neglect, and abuse shall be made by a preponderance of the evidence." B.C. v. B.T. , 182 S.W.3d 213, 217 (Ky. App. 2005). See also KRS 620.100(3).