RENDERED: JUNE 27, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2025-CA-0222-ME

J.G.; C.D.; L.G.; AND B.L.                                    APPELLANTS

v.

APPEAL FROM DAVIESS CIRCUIT COURT
FAMILY COURT DIVISION
HONORABLE ANGELA THOMPSON, JUDGE
ACTION NO. 23-J-00179-003

COMMONWEALTH OF KENTUCKY,
CABINET FOR HEALTH AND
FAMILY SERVICES; A.B.;
COMMONWEALTH OF KENTUCKY,
DAVIESS COUNTY ATTORNEY;
AND A.D., A MINOR                                            APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE: EASTON, A. JONES, AND LAMBERT, JUDGES.

EASTON, JUDGE: The Appellants are prospective adoptive parents

("Intervenors") and the biological parents ("Parents") of a four-year-old child

("Child"). Both appeal from the order of the Daviess Family Court which denied the Intervenors' motion to intervene in a DNA[1] action. The Appellee, Cabinet for Health and Family Services ("Cabinet") argued, and the family court agreed, the Intervenors did not have standing to intervene in this DNA action, as they have no present relationship to Child. Having reviewed the record and the applicable law, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

In September 2024, the Cabinet filed a DNA petition and motion for emergency temporary custody of Child and Child's younger sibling ("Sibling"). The petition included allegations of domestic violence between Mother and Sibling's Father, as well as allegations of physical abuse by Mother against Sibling. Emergency temporary custody of Child and Sibling was granted to the Cabinet on September 19, 2024. Child and Sibling were placed together in a Cabinet-approved foster home, where they have remained. At the time of this initial placement, Child's Father was incarcerated.

In January 2025, Intervenors filed a motion to intervene in the DNA action with a motion for custody. Apparently, after the removal of Child and Sibling, Parents went to a private adoption agency and interviewed potential adoptive parents. Parents interviewed and selected Intervenors as the adoptive

---

[1] Dependency, Neglect, and Abuse.

parents for Child. In November 2024, Parents both signed Voluntary and Informed Consent for Adoption forms to allow Intervenors to proceed with adoption of Child. It is undisputed that Intervenors have never met Child.

The family court heard the motions on January 16, 2025. The Cabinet objected to allowing intervention. The Cabinet argued that Intervenors do not have standing in the DNA action, as they are not relatives or fictive kin of Child. It further argued it was not in Child's best interest to move Child away from a stable home with Sibling into a home with strangers during the DNA process.

The family court agreed with the Cabinet, and it denied both Intervenors' motion to intervene and motion for custody. The Intervenors timely appealed, and Parents join in the appeal. Further facts will be discussed as they become relevant to our analysis.

## STANDARD OF REVIEW

We review a trial court's order granting or denying intervention for clear error. *A.H. v. W.R.L.*, 482 S.W.3d 372, 373 (Ky. 2016). "In general, a court is given broad discretion in determining whether or not one should be permitted to intervene." *Ipock v. Ipock*, 403 S.W.3d 580, 583 (Ky. App. 2013). "The 'clearly erroneous' standard is sufficiently broad to permit the reviewing court to adopt a method of review which best fits the questions involved and the particular facts in a specific case. The appellate court should review each case according to what is

most appropriate under the specific circumstances." *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986). In evaluating abuse of discretion, this Court reviews legal conclusions applied by the trial court *de novo*. *Ehret v. Ehret*, 601 S.W.3d 508, 511 (Ky. App. 2020). The question of standing is an issue of law, and we therefore specifically review it *de novo*. *Cabinet for Health & Fam. Servs. v. Batie*, 645 S.W.3d 452, 464 (Ky. App. 2022).

## ANALYSIS

We must determine if the family court erred in not allowing Intervenors to intervene in this DNA action because it determined they did not have standing. Before we reach the merits of the appeal, we should first address the initial problem of the Cabinet's failure to file an Appellee Brief. Under RAP[2] 31(H)(3),

> If the appellee's brief has not been filed within the time allowed, the court may: (a) accept the appellant's statement of the facts and issues as correct; (b) reverse the judgment if appellant's brief reasonably appears to sustain such action; or (c) regard the appellee's failure as a confession of error and reverse the judgment without considering the merits of the case.

"The decision as to how to proceed in imposing such penalties is a matter committed to our discretion." *Roberts v. Bucci*, 218 S.W.3d 395, 396 (Ky. App. 2007). It is troubling that the Cabinet failed to meet its obligations in this

---

[2] Kentucky Rules of Appellate Procedure.

appeal, particularly considering how strenuously the Cabinet objected to the Intervenors' motions at the hearing. Yet, because of the importance of the issue presented regarding Child and the uncomplicated record, we have decided to review the record and adjudicate the appeal.

The statutes governing the ability to intervene are CR[3] 24.01 and 24.02. CR 24.01 gives the power to intervene by right if its mandates are met. CR 24.02 "provides trial courts with discretion to allow intervention in cases if the interest of the movant so warrants, even if the asserted interest fails to satisfy the dictates of CR 24.01." *A.H.*, *supra*, at 375.

CR 24.01 states:

(1) Upon timely application anyone shall be permitted to intervene in an action (a) when a statute confers an unconditional right to intervene, or (b) when the applicant claims an interest relating to the property or transaction which is the subject of the action and is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless that interest is adequately represented by existing parties.

CR 24.01 is the proper rule for analysis in this case. "As compared to matter-of-right intervention in Rule 24.01, permissive intervention is more concerned with consolidating common legal and factual questions than with

---

[3] Rules of Civil Procedure.

protecting the implicated rights of non-parties." *Bailey v. Bertram*, 471 S.W.3d 687, 690-91 (Ky. 2015).

The family court determined that Intervenors did not have standing to intervene in the DNA action. Further, it determined it would not be in the best interests of Child to grant them temporary custody in the DNA action. Intervenors make several arguments to challenge the family court's order.

First, Intervenors claim their intervention motion was timely, meeting the first requirement of CR 24.01. The timeliness of the motion was never disputed, nor was it discussed as a reason by the family court for its denial. We then determine that the timeliness of the motion is irrelevant to our analysis. The fact that Intervenors filed their motion to intervene in a timely manner is of no consequence if they do not have standing to intervene.

Next, Intervenors argue they have a sufficient legal interest relating to the "transaction," *i.e.*, Child, who is the subject of the action. Intervenors rely mostly on *Baker v. Webb*, 127 S.W.3d 622 (Ky. 2004), to support their claims. We find *Baker* to be distinguishable from the circumstances presented here.

As an initial matter, the case in *Baker* was an adoption case, not a DNA action. "The main purpose of DNA proceedings is protecting the health and safety of children rather than determining adults' rights to child custody." *S.G. v. Cabinet for Health & Fam. Servs.*, 652 S.W.3d 655, 669 (Ky. App. 2022). A DNA

action deals with emergent situations. Its purpose includes facilitating stability to a family. Its immediate and primary purpose is not the ultimate custody of the child in the separate context of moving toward termination of parental rights and adoption. Different and usually later proceedings address these questions.

The appellants in *Baker* were relatives of the child to be adopted. The court in *Baker* faulted the Cabinet for failing to abide by its own policies by not considering the relatives for placement of the child. None of those factors are present here. These factors, particularly the fact that the appellants in *Baker* were family members, are particularly relevant to the Court's holding. "The language of this statute clearly evidences a preference for relative placement in adoption proceedings." *Baker*, *supra*, at 625. The Intervenors are not relatives. Again, they have never met Child.

Subsequent to *Baker*, this Court clarified in *Cabinet for Health and Family Services v. Batie*, 645 S.W.3d 452 (Ky. App. 2022), that the identifiable interest allowing intervention in *Baker* was not the right to custody, but the "right of known relatives to be '*evaluated for relative placement*, as mandated by [the Cabinet's] own policies and regulations,' after which the Cabinet can 'make an informed recommendation to the circuit court as to the *best placement* option for the child' during the temporary removal phase." *Id.* at 465 (citing *Baker*, *supra*, at 626) (emphasis in original). The Court in *Baker* did not remand and order the trial

court to simply grant custody to the relatives; it remanded and ordered the Cabinet to have Appellants evaluated for relative placement, to be considered as potential adoptive parents. *Baker*, *supra*, at 626.

> Therefore, we conclude the rule in *Baker* will find application when courts are faced with such unusual facts as found in that case. Then, the court can turn to *Baker* for the rule that intervention of right in an adoption is required upon proof the intervenor: (1) is known to the Cabinet, KRS[4] 620.090(2); (2) is "a relative who has been denied consideration" for placement, *Baker*, 127 S.W.3d at 625; and (3) asserts the interest while the child is still subject to an order of temporary custody under KRS 620.090(1) – *i.e.*, before the "present" interest under KRS 620.090(2) lapses. *Baker*, 127 S.W.3d at 624.

*Batie*, *supra*, at 468.

The Intervenors here also cannot overcome the hurdle that "to intervene, the party's interest relating to the transaction must be a present substantial interest in the subject matter of the lawsuit, rather than an expectancy or contingent interest." *Baker*, *supra*, at 624 (internal quotation marks omitted). They claim that they "have committed both tremendous financial resources and contractually agreed to adopt the subject child . . . ."[5] This is not a present interest for a DNA action. The family court had never granted any type of custody of Child to Intervenors, so they had no "present interest," much less any "substantial

---

[4] Kentucky Revised Statutes.

[5] Appellant Brief, Page 4.

interest." Any interest would merely be an expectant one. It is also certainly a contingent interest, as multiple events must occur before the Intervenors would have the ability to adopt Child through a different and separate legal proceeding.

Despite the DNA case still being in its early stages, Intervenors cannot get around the fact that they have no relationship, familial or otherwise, with Child. They cite to no precedent that would allow strangers to intervene in a DNA action for the purpose of achieving a later adoption of the child. In fact, this Court has indicated to the contrary in *G.P. v. Cabinet for Health & Family Services*, 572 S.W.3d 484 (Ky. App. 2019), a case involving a stepmother. "The General Assembly has stated a preference for family placement with 'qualified relatives of the child.' KRS 620.090(1). Stepmother is biologically unrelated to Child. Despite CHFS approving Stepmother as a potential custodian, no proof was introduced to overcome her status as a "stranger" and establish she had standing to seek custody. The trial court properly excluded Stepmother as a potential custodian." *Id.* at 492.

In *G.P.*, Stepmother *did* have a previous relationship with the child, but the court still determined she did not have standing to be considered for custody at that time. And like the Parents here, the biological father in *G.P.* expressed his wishes that Stepmother be granted custody of the child and signed a Power of Attorney purporting to name Stepmother as the child's guardian. In *G.P.*,

the trial court granted custody to the Cabinet, who placed the child with a foster family, and this Court affirmed. *Id.*

Intervenors argue that the parents' wishes should have been given more consideration, pursuant to KRS 620.090. However, Intervenors quote only part of that statute in their claim. KRS 620.090(1) states:

> If, after completion of the temporary removal hearing, the court finds there are reasonable grounds to believe the child is dependent, neglected or abused, the court shall:
>
> > (a) Issue an order for temporary removal and shall grant temporary custody to the cabinet or other appropriate person or agency. *Preference shall be given to available and qualified relatives of the child considering the wishes of the parent or other person exercising custodial control or supervision*, if known…

(Emphasis added.)

The statute makes clear that the wishes of the parent in a DNA case go hand in hand with the preference for qualified relatives. The statements are made together in one sentence and should be read together. Preference is to be given to *relatives* that the parents prefer to have placement of their children during a DNA case.

We find further guidance in *Commonwealth, Cabinet for Health & Family Services v. L.J.P.*, 316 S.W.3d 871 (Ky. 2010). In *L.J.P.*, grandparents were determined to lack standing to intervene in a termination of parental rights

-10-

action. Like the present situation, the parents in *L.J.P.* filed a voluntary consent to adopt form, but it was contingent upon an adoption of the child by grandparents. They also filed their voluntary consent only *after* a petition for involuntary termination of parental rights had been filed.

The grandparents did not meet the statutory requirements to adopt the child, as the child had not resided with them for the required time period. The Kentucky Supreme Court stated, "[i]f the parents retain parental rights to their children, then KRS 199.500 states that an adoption *shall not* be granted without voluntary and informed consent of the parents. . . . [M]erely retaining parental rights does not *compel* that a child be permitted to be adopted on the parents' consent alone. Obtaining the consent of parents who retain their parental rights is but the *first* step of a consent adoption. Thereafter, all the rest of the statutory provisions governing adoption proceedings apply." *Id.* at 874 (emphasis in original).

The Supreme Court then analyzed the question of, if the grandparents did not have standing to adopt Child, did they have standing to intervene in the termination proceedings. Because there is no statutory right for grandparents to intervene in termination proceedings, this came down to whether the grandparents had a "present substantial interest in the subject matter of the lawsuit[.]" *Id.* at 875 (citing *Baker*, *supra*, at 624). The Court ruled that they did not.

> To the extent that Appellees' interest is in receiving custody post-termination, it would not be a "present substantial interest" but merely "an expectancy or contingent interest," *Baker*, 127 S.W.3d at 624, and thus insufficient to warrant their intervention as a matter of right. The family court is obligated, upon issuing an order terminating parental rights, to "vest care and custody of the child in such person, agency, or cabinet as the court believes best qualified." KRS 625.100(1). Thus, Appellees would be entitled to custody only if the court finds they are the "best qualified" among all potential custodians, something which is purely speculative at this point, especially since parental rights have not been terminated.

*Id.* at 876. If this is the rule to be applied in a termination of parental rights proceeding, it surely must also be the rule for the less invasive, usually earlier, and temporary DNA process, which again has an initial goal of maintaining the family unit if possible.

Parents do not explain why they wish to place Child with Intervenors to be adopted rather than the foster family Child was placed with by the Cabinet, along with Sibling. Any explanation on our part would be speculation. They simply state they do not wish for Child to languish in foster care, which is, of course, an understandable goal.

If Parents are willing to voluntarily terminate their parental rights, the process would be a relatively quick one. But it appears Parents will only voluntarily terminate their rights if Child is placed with Intervenors, strangers to Child, and, as far as they have expressed to both this Court and to the family court,

strangers to them as well. Regardless of Parents' reasons, they are not legally entitled to dictate that Child be placed with Intervenors at this time and in the specific context of a DNA proceeding.

In summation, "to establish constitutional standing, the party bringing suit must show that the action injures him in a concrete and personal way." *S.T. v. Cabinet for Health & Fam. Servs.*, 585 S.W.3d 769, 779 (Ky. App. 2019) (internal quotation marks omitted). Intervenors have no relationship to Child, and therefore cannot be aggrieved by not being given what they never had to begin with, especially considering the purpose and procedural context of a DNA case.

**CONCLUSION**

When the Cabinet has been called upon to act through a DNA proceeding, such an intervening DNA case may well impede a consent adoption. Nothing prohibits the Cabinet, which has custody due to the DNA case, from considering the Intervenors as a future custodial placement with a view toward adoption, provided the Intervenors could meet licensing or other requirements for such a placement, but the Cabinet was not required to agree to participation by the Intervenors as parties to the DNA case. We do not mean to suggest any specific answer for how the Intervenors could participate in the ultimate decision as to the custody of Child, we only hold that the family court here did not abuse its

discretion in not allowing intervention in the DNA case. The Intervenors did not have standing to do so. Having no standing, the denial of the custody motion in the DNA case naturally followed. The Daviess Family Court is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANTS J.G. AND L.G.:

NO BRIEF FOR APPELLEES.

Ashley Wiggins White
Calvert City, Kentucky

BRIEF FOR MOTHER AND FATHER:

W. Waverley Townes
Louisville, Kentucky