RENDERED: NOVEMBER 7, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-1429-MR

LINDY ROBINSON                                                      APPELLANT

v.

APPEAL FROM FAYETTE FAMILY COURT
HONORABLE LIBBY G. MESSER, JUDGE
ACTION NO. 11-CI-04595

DAVID INGORDO                                                      APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; ECKERLE AND LAMBERT, JUDGES.

ECKERLE, JUDGE: Appellant, Lindy Robinson ("Mother"), appeals the October 28, 2024, order of the Fayette Circuit Court, Family Division, concerning the custody of the minor child ("Child") that she shares with Appellee, David Ingordo ("Father"). That order modified the prior joint custody arrangement to give sole

custody of Child to Father.  After carefully reviewing the briefs, the record on appeal, and the relevant law, we affirm.

## BACKGROUND

Child was born in 2011 to Mother and Father, who were never married.  They soon filed a joint petition for custody in Family Court, which awarded them joint custody by agreement.  For the following 13 years, Mother and Father proceeded to litigate a plethora of parenting issues.  The history of the case demonstrates the following cyclical behavior:  Mother fails to comply with Family Court orders or discuss parenting issues with Father; Father files a motion to compel; and Mother and Father usually reach an agreement before a substantial hearing occurs.[1]

One such ongoing, parenting issue revolved around the best manners by which to address Child's Attention-Deficit/Hyperactivity Disorder ("ADHD").  In early 2019, Father filed a motion to compel Mother to conference the issue with him, as he claimed she was refusing to discuss it.  While Father mentioned that he was initially opposed to medication, he believed that starting Child on a trial run of medication, as suggested by Child's school and doctor, may be something beneficial to explore.  (Record ("R.") at 267.)  Pursuant to an order of the Family

---

[1] While the Family Court instructed Mother and Father to go to parenting coordination and family counselling various times throughout litigation to attempt to address coparenting issues there, it appears the parties did not engage in either of these patently-needed processes.

-2-

Court, and by their agreement with its contents, Mother and Father began this trial run of medication for 14 days. (R. at 376.) In late 2019, Father filed a motion stating that while Mother had obtained and filled an ADHD prescription for Child, he did not know whether Child had taken any of it. He alleged that Mother may be taking the prescription herself to address her own ADHD. He requested that the ADHD prescription be taken to Child's school and administered by her teachers to determine whether Child had any positive effects from taking it. (R. at 395.) The Family Court complied by issuing an order to that effect, but it is unclear from the record whether this procedure was followed, and if so, for what period of time. However, it is uncontroverted that Child did not take any ADHD medication after 2019. In late 2022, Father filed a motion for contempt because Mother allegedly had maternal grandmother take Child to a pediatrician to renew Child's ADHD prescription without Father's knowledge or agreement. The Family Court found Mother in contempt for this violation, as well as other infractions, but the parties did not raise the ADHD medication issue again until the following year.

In October of 2023, Father expressed concerns about Child's fatigue, mood swings, and a headache. Father claimed that Child had reported to him that before she went to school, Mother had given her a pill, which Mother claimed would "make her smarter." Mother initially told Father that she had given Child a vitamin. After Child continued to exhibit symptoms, she was taken to her doctor

for drug testing, which yielded a positive result for amphetamines. Mother then revealed that she had lied, and she claimed to have given Child some of Child's expired ADHD prescription, which Mother had stored from 2019. Father filed another motion for contempt, which the Family Court heard in early November of 2023. The Family Court noted serious concerns with Mother's bad decision-making and continuous defiance of Court orders. It issued another order temporarily suspending Mother's unsupervised timesharing, ordering Mother to obtain a psychological evaluation from Dr. David Feinberg, and appointing a Friend of the Court ("FOC")[2] to investigate the case and assist in finding an appropriate supervisor for Mother's timesharing. Mother later saw Dr. Feinberg, who completed a psychological evaluation in the Spring of 2024, which will be discussed in more detail below.

Father subsequently filed a motion to modify custody and timesharing, and he specifically requested sole custody. The Family Court conducted a hearing on this motion over the span of two days in August and September of 2024, during which it heard testimony from a variety of individuals

---

[2] A Friend of the Court is an individual appointed as an officer by a circuit court to investigate the child's and the parents' situations, to file a report summarizing his or her findings, and to make recommendations as to the outcome of the proceeding. Kentucky Revised Statutes ("KRS") 403.090. In this case, this FOC was the third one that the Family Court appointed during the tenure of the case.

including both parties, Dr. Feinberg, Father's personal assistant, some of Mother's medical providers, Mother's friend, and Child's maternal grandmother.

Dr. Feinberg testified that Mother exhibited extreme defensiveness during his evaluation, and that as a result, her testing results were not as accurate as they could have been had Mother authentically engaged. In his professional opinion, Dr. Feinberg stated that Mother is very limited in sharing and expressing her feelings, has a strong need for control and is angered by the fact that she is being required to "coparent," expresses anger management issues presented primarily in the form of verbal aggression, and perceives Father to be the reason for most of the issues concerning Child. He further explained that he did not believe that Mother was a physical threat to Child, but he did have significant concerns with Mother's impulsive behaviors and her apparent inability to differentiate her own feelings and needs from those of Child. While he did not make a formal diagnosis in his report, he testified that Mother exhibited several signs of avoidant personality disorder. He recommended that Mother engage in weekly counselling and consult with a psychiatrist to discuss medications and ensure that Mother took her own ADHD medication as prescribed.

The FOC testified that her communications and interactions with Mother were substantially similar to those reported by Dr. Feinberg, namely that Mother was extremely defensive and unwilling to engage thoughtfully. When

talking with Mother about the ADHD medication, the FOC stated that Mother did not understand the gravity of the issue because all of Child's classmates were taking similar medications. The FOC noted that she believed Mother to have an unhealthy obsession with her weight and had concerns that she might be projecting that obsession onto Child. Ultimately, the FOC opined that it was clear that Mother is unwilling to parent along with Father and recommended that Father be awarded sole custody of Child. She also agreed with Dr. Feinberg's recommendations.

Father testified to the history of the inability to "coparent" throughout Child's life, Mother's previous behaviors, and his actions in engaging with the Courts as a result. Some of Mother's behaviors included her denigration of some of Child's teachers, resulting in the school blocking communication with Mother for a time; her belittling of Father's personal assistant, resulting in a Family Court order prohibiting contact between Mother and the personal assistant; and Mother's negative comments directed towards Father and his current wife, which Mother placed on Child's social media. He also had concerns about Mother having an expired driver's license and lacking a working vehicle for multiple months in 2024.

Mother believed that the parties' parenting relationship was not as bleak as Father had suggested and had been going well in 2023 before the ADHD medication incident. She acknowledged that her past communications with Child's

teachers and Father's personal assistant were inappropriate. Mother also expressed regret in giving Child an expired ADHD medication without talking with Father first; although when asked why she engaged in those actions, she did not provide any explanation. As of the date of the hearing, Mother had not started going to therapy as recommended by Dr. Feinberg,[3] though she had attended one recent meeting with a psychiatrist. Mother also expressed her concerns with Father throughout the history of the case, testifying that he travelled extensively because of his job and would often place his parental responsibilities on his wife and his personal assistant. Mother, as well as her friend and Child's maternal grandmother, testified that Mother and Child had a good relationship.

On October 28, 2024, the Family Court issued its Findings of Fact, Conclusions of Law, and Order, in which it awarded sole custody to Father. On appeal Mother argues that the Family Court's findings were not supported by substantial evidence and that it incorrectly applied KRS 403.340.

### STANDARD OF REVIEW

This Court reviews child custody decisions made by a Family Court for an abuse of discretion and analyzes whether its findings of fact were clearly

---

[3] Mother did have a handful of meetings with a therapist to which she had been referred previously. That therapist, who also happened to be Child's physical education teacher, appeared as a witness and testified that Mother had never shown Dr. Feinberg's report to her, and had since ceased working with Mother due to Mother's need to consult with a psychiatrist.

erroneous. *Eviston v. Eviston*, 507 S.W.2d 153, 153 (Ky.1974). "Findings of fact[] shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." Kentucky Rules of Civil Procedure ("CR") 52.01. A Trial Court's findings of fact are only clearly erroneous when they are manifestly against the weight of the evidence or otherwise not supported by substantial evidence. *See Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. 1967). Substantial evidence is "evidence of substance and relevant consequence having the fitness to induce conviction in the mind" of a reasonable person. *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted). Finally, to the extent that the Circuit Court was required to interpret the statutes under KRS Chapter 403 and its application of the law to established facts, we will conduct a review *de novo*. *See Commonwealth v. Montaque*, 23 S.W.3d 629, 631 (Ky. 2000) (citations omitted).

## ANALYSIS

Before modifying a custody decree, a Family Court must find, after a hearing, that a change in circumstances has occurred with the family, and that a modification is in the best interests of the child. KRS 403.340(3). When making these determinations, KRS 403.340(3) provides a list of factors for the Family Court to consider that include the following:

(a) Whether the custodian agrees to the modification;

-8-

(b) Whether the child has been integrated into the family of the petitioner with consent of the custodian;

(c) The factors set forth in KRS 403.270(2) to determine the best interests of the child;

(d) Whether the child's present environment endangers seriously his physical, mental, moral, or emotional health;

(e) Whether the harm likely to be caused by a change of environment is outweighed by its advantages to him; and

(f) Whether the custodian has placed the child with a de facto custodian.

KRS 403.340(5) further provides:

> Subject to KRS 403.315, if the court orders a modification of a child custody decree, there shall be a presumption, rebuttable by a preponderance of evidence, that it is in the best interest of the child for the parents to have joint custody and share equally in parenting time. If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or de facto custodian has with the child and is consistent with ensuring the child's welfare.

A Family Court considers the rebuttable presumption of joint custody afforded by KRS 403.340(5) only after it determines that a change in circumstances has occurred, and that a modification of custody is in a child's best interests.

*Berzansky v. Parrish*, 583 S.W.3d 6, 8 (Ky. App. 2019).

We will begin with Mother's argument that the Family Court's findings were not supported by substantial evidence. Specifically, Mother contends that there was no substantial evidence to support some of the claims raised against her, namely that she was abusing prescription medications herself, had an unhealthy obsession with weight that she was encouraging Child to adopt, or had any mental health diagnoses that would endanger Child. She also argues that there was no evidence presented that Child had adverse reactions to joint custody.

Contrary to what Mother purports, from our review of the record on appeal, there was substantial evidence presented that supports the Family Court's findings that a change of circumstances occurred, and a modification of custody was in Child's best interests. It is abundantly clear from the record on appeal that Mother has significant problems in controlling and regulating her emotions, has a history with verbally denigrating individuals involved in Child's upbringing to the point that communications either need to be halted or limited, and has consistently defied the Family Court's orders. Strictly speaking, whether Mother has an unhealthy obsession with weight that she is projecting onto Child, is abusing

prescription medications, or has been formally diagnosed with avoidant personality disorder were not necessary findings to support the Family Court's decision.[4]

Furthermore, we find that there was evidence that Child had adverse reactions to joint custody. While the Family Court found that Child was relatively thriving despite Mother's and Father's inability to parent together, it is uncontested that Child experienced medical distress due to receiving from Mother an alleged expired narcotic medication. Mother administered this medication without consulting Father and did so with the knowledge that he had opposed it in the past. Mother then lied about it and only revealed the truth once she was confronted with Child's unassailably positive drug test. The Family Court also took into account Mother's less-than-forthcoming testimony about the incident, particularly noting Mother's inability and unwillingness to provide any explanation for her behaviors or assurances that such actions would not occur in the future.

Mother next argues that the Family Court erred in its application of KRS 403.340. First, she asserts that the Family Court inappropriately interpreted Father's motion for sole custody as a motion to modify timesharing. We are

---

[4] Notably, the Family Court did not actually find any of these ostensible claims to be true. It merely noted the testimony of the FOC, Father, and Dr. Feinberg about those claims in its consideration of statutory factors. And even if the Family Court had found those claims to be accurate, "judging the credibility of witnesses and weighing evidence are tasks within the exclusive province of the trial court. Thus '[m]ere doubt as to the correctness of [a] finding [will] not justify [its] reversal[.]'" *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citations omitted).

unpersuaded. This argument appears to be based on a typographical error contained within the October 28, 2024, order. Mother points to a portion of the order that states: "[a]s the original custody decree was entered more than two years ago, the court finds that this is a modification of timesharing governed by KRS 403.340(3) and (4)." (R. at 1188.) While listing "timesharing," it does not mention "custody." However, on the next page, the order states that when considering the factors of KRS 403.340 and KRS 403.270, "it is simply required that the court consider and weigh them all when determining whether a modification in *custody and timesharing* serves the best interest of the child." (R. at 1189) (emphasis added). It is apparent after reviewing the record on appeal and watching the relevant hearings, that the Family Court indeed considered Father's motion to be one to modify custody. Additionally, the statutory factors that the Family Court considered are essentially the same in their applications to modifications of timesharing and custody. Insofar as the manner in which the relevant statutes apply differently to custody and timesharing modifications, the primary contrast is the rebuttable presumption of joint custody afforded by KRS 403.340(5), which leads us to Mother's final argument – that the Family Court failed to apply the presumption of joint custody.

We initially observe that, while Mother briefly mentioned the rebuttable presumption issue during the hearing below, she filed no motion

requesting either post-judgment relief, such as a motion to alter, amend, or vacate under CR 59.05, or additional findings of fact under CR 52.04 after the appealed order was entered. Thus, preservation of this issue requisite to invoke our review is questionable. *See Oakley v. Oakley*, 391 S.W.3d 377, 380 (Ky. App. 2012); *see also* Kentucky Rules of Appellate Procedure ("RAP") 32(A)(4). Regardless, given that this case involves the welfare of Child, we choose to review the matter for manifest injustice, or in other words, palpable error. *See G.P. v. Cabinet for Health & Fam. Servs.*, 572 S.W.3d 484, 489-90 (Ky. App. 2019); *see also* CR 61.02. "For an error to be palpable, it must be easily perceptible, plain, obvious and readily noticeable[;] . . . must involve prejudice more egregious than that occurring in reversible error[;] . . . [or] must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceedings." *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006) (internal quotation marks and citations omitted).

In this case, Mother is correct that the Family Court did not explicitly mention the rebuttable presumption in the appealed order. However, after a review of the record on appeal, it is apparent that the Family Court took into consideration the rebuttable presumption in its rulings. Counsel and the Family Court specifically discussed whether the rebuttable presumption of joint custody afforded by KRS 403.340(5) would apply. The Family Court emphatically stated that it

would apply that presumption. Further, it emphasized that, if it determined that a modification from joint custody to sole custody was in Child's best interests, the allegations Father has raised in this case, it would necessitate applying the presumption because "if factually proven to be true, [the allegations] would more than likely overcome that presumption." (Video Record, ("V.R.") August 20, 2024, Hearing – 9:14:45.) The appealed order also states that while the Family Court finds that sole custody is appropriate, it "will enter a timesharing order that maximizes the child's time with the mother in a safe and appropriate way but minimizes opportunities for dangerous parental decision making." (R. at 1194.) This language mirrors the language of KRS 403.340(5). While the Family Court could have been clearer on this issue, considering the circumstances and the Family Court's extensive findings regarding the factors of KRS 403.340(3) and (4) and best interest factors contained in KRS 403.270(2), we find no error in the Family Court's application of KRS 403.340.

## CONCLUSION

Accordingly, we affirm the Fayette Family Court's order of October 28, 2024.

ALL CONCUR.

BRIEFS FOR APPELLANT:     BRIEF FOR APPELLEE:

J. Ross Stinetorf          Lisa L. Johnson
Lexington, Kentucky        Lexington, Kentucky